PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
|  | : | Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL | : | Judge Brieant |
| COMPANY, LLC, | : | |
|  | : | ECF CASE |
|  | : | |
| Plaintiff, | : | NOTICE OF MOTION |
|  | : | FOR DEFAULT |
| vs. | : | JUDGMENT |
|  | : | |
| KGM CIRCUIT SOLUTIONS, LLC, | : | |
|  | : | |
| Defendant. | : | |
-----------------------------------------------------------------------x

TO:   KGM Circuit Solutions, LLC
      30 Wall Street, Suite 1100
      New York, New York 10003

SIRS:

        PLEASE TAKE NOTICE that the undersigned attorneys for plaintiff will apply to the above

named Court located at U.S. District Court Southern District, U.S. Courthouse, 300 Quarropas

Street, White Plains, New York 10601 for an Order of Default Judgment pursuant to FRCP 55(b)(2)

against defendant for failure to answer or otherwise move with regard to the Complaint.

        PLEASE TAKE FURTHER NOTICE that plaintiff shall rely upon an Affidavit of Service,

Affidavit of Amount Due and Non-Military Service and Request for Entry of Default.  Also, a proposed form of Judgment is enclosed.

PLEASE TAKE FURTHER NOTICE defendants must file any opposition to this motion within fourteen days hereof.

PLEASE TAKE FURTHER NOTICE that oral argument is hereby requested only if opposition is timely filed and received.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey  07871
Attorneys for Plaintiff

By: /s/ Frank Peretore, ESq.
      Frank Peretore, Esq.

Dated:  06/10/08

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I today caused a copy of the within request for entry of default judgment

and supporting papers to be served, via **certified** and **ordinary** mail, upon the defendant as follows:

KGM Circuit Solutions, LLC
30 Wall Street, Suite 1100
New York, New York 10003

Dated:  06/10/08                                    By:  <u>/s/ Frank Peretore, Esq.</u>

                                                          Frank Peretore, Esq.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
|  | : | Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL | : | Judge Brieant |
| COMPANY, LLC, | : | |
|  | : | ECF CASE |
|  | : | |
| Plaintiff, | : | REQUEST FOR ENTRY |
|  | : | OF DEFAULT |
| vs. | : | |
|  | : | |
| KGM CIRCUIT SOLUTIONS, LLC, | : | |
|  | : | |
| Defendant. | : | |
-------------------------------------------------------------------x


TO:      KGM Circuit Solutions, LLC
             30 Wall Street, Suite 1100
             New York, New York 10003


     Will you please enter the default of the defendant, KGM Circuit Solutions, LLC, in the above-entitled matter for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure.

     Plaintiff relies upon the enclosed Affidavit of Service in support of the request filed herein.

PERETORE & PERETORE, P.C.
Counselors at Law
191 Woodport Road
Sparta, New Jersey 07871
Attorneys for Plaintiff


By: _____/s/ Frank Peretore, Esq.
Frank Peretore, Esq.

Dated:  06/10/08

CERTIFICATE OF SERVICE

I hereby certify that I today caused a copy of the within request for entry of default judgment

and supporting papers to be served, via **certified** and **ordinary** mail, upon the defendant as follows:

KGM Circuit Solutions, LLC
30 Wall Street, Suite 1100
New York, New York 10003

Dated:  06/10/08                                By:    /s/ Frank Peretore, Esq.

                                                          Frank Peretore, Esq.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL | : | Judge Brieant |
| COMPANY, LLC, | : | |
| | : | ECF CASE |
| | : | |
| Plaintiff, | : | AFFIDAVIT OF SERVICE |
| | : | AND DEFAULT |
| vs. | : | |
| | : | |
| KGM CIRCUIT SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

_____x

STATE OF NEW JERSEY    :
                                             : SS.:
COUNTY OF SUSSEX        :

     FRANK PERETORE, of full age, being duly sworn according to law, upon his oath deposes

and says:

     1.  I am an attorney-at-law of the State of New York and a member of Peretore & Peretore,

P.C., attorneys for Plaintiff in the above-captioned action.  I am fully familiar with the facts in this

1

action and make this Affidavit on personal knowledge.  I am submitting this Affidavit in support of Plaintiff's Request for Entry of Default Judgment against the Defendants.

2. On May 9, 2008, the Complaint and supporting papers in this action were served upon the defendant by delivering a true copy to Jane Smith, Managing Agent, as appears from the Affidavit of Service, a copy of which is attached hereto as **Exhibit A**.

3. Greater than twenty (20) days has expired since the last service and filing of the summons and Complaint.

4.  The time within which the defendant may answer or otherwise move as to the complaint has expired and said defendant has not answered or otherwise moved, and the time for said defendant to answer or otherwise move has not been extended.

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.

Sworn and subscribed to
before me this 10th day
of June, 2008.

   /s/ Marlene J. Meyers
Marlene J. Meyers
Notary Public of New Jersey
My Commission Expires Feb. 9, 2010

**EXHIBIT A**

U.S. DISTRICT COURT
SOUTHERN-NY DISTRICT OF NEW YORK

**RECEIVED**
**MAY 3 0 2008**
**USDC-WP-SDNY**

N

Index # 08 CIV 3856
Index # Filed 04/23/08

Plaintiff(s)
NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC

- against -

Defendant(s)
KGM CIRCUIT SOLUTIONS, LLC

Peretore & Peretore, P.C
191 Woodport Rd.,
Sparta, NJ 07871

Court Date:
Your File No:
Our Rec. No: 293014

STATE OF NEW YORK: COUNTY OF NASSAU: ss:

Harry Torres LIC#915257, being duly sworn deposes and says deponent is not a party
to this action and is over the age of eighteen and resides in the State of New York.

That on 05/09/08 at 9:12AM at:

        30 WALL STREET, SUITE 1100
        NEW YORK, NY  10003

deponent served the within CIVIL COVER SHEET, SUMMONS, COMPLAINT, RULE 7.1 STATEMENT**
on KGM CIRCUIT SOLUTIONS, LLC recipient therein named.

By delivering to and leaving with "JANE SMITH"
at 30 WALL ST, STE 1100, NYC 10003
and that he knew the person so served to be the MANAGING AGENT
of the corporation.

A description of the recipient or other person served on behalf of the recipient is as follows:

Approximate Age: 45      Approximate Weight: 130      Approximate Height: 5'4"
Color of Skin: WHITE          Color of Hair: BLACK          Sex: FEMALE
REFUSED TO GIVE NAME

Deponent asked the person spoken to whether the defendant was presently in the military service of the United States Government or on active
duty in the military service in the State of New York and was informed he was not.  Your deponent further says that he knew the person so
served to be the person mentioned and described in said legal papers as defendant/respondent therein.  Your deponent is over the age of 18
years and is not a party to this action.

Sworn to before me this date 05/13/08
Bruce J Smilowitz #01SM4965926
Notary Public, State of New York
Nassau County, Commission Expires 04/30/2010

Harry Torres/LIC#915257

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
|  |  |
|---|---|
| | :     Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL | :     Judge Brieant |
| COMPANY, LLC, | : |
| | :         ECF CASE |
| | : |
|     Plaintiff, | :   AFFIDAVIT OF AMOUNT DUE |
| | :   AND NON MILITARY SERVICE |
|     vs. | : |
| | : |
| KGM CIRCUIT SOLUTIONS, LLC, | : |
| | : |
|     Defendant. | : |
-------------------------------------------------------------x

STATE OF OHIO          :
                               : ss.
COUNTY OF HAMILTON   :

      Lisa Marie Moore, being duly sworn upon his oath, deposes and says:

      1. I am Vice President of National City Commercial Capital Company, LLC ("National City"

or "plaintiff") in this matter and I make this Affidavit in support of plaintiff's motion for Default

Judgment as against the defendant. I am authorized to make the within affidavit on behalf of plaintiff and am fully and personally familiar with the circumstances and facts contained herein.

## PROCEDURAL HISTORY

2. The above action was commenced by the service of a Summons and Complaint. (See Exhibit A to the Affidavit of Service and Default.) True and accurate copies of the Summons and Complaint are attached hereto as **EXHIBIT A.**

3. The time for the defendant to answer or move with respect to the Complaint has expired and the defendant has not answered or moved with respect to the Complaint.

## TRANSACTIONAL HISTORY

### Transaction One

4. On or about October 31, 2006, KGM entered into and executed Master Note and Security Agreement # 88046000 ("Master Note #1"), as Borrower, with General Electric Capital Corporation ("GE") as Lender whereby KGM purchased certain equipment, which is listed on the invoices (Equipment) attached to the Master Note #1. Attached hereto as **EXHIBIT B** is a true and accurate copy of the Master Note #1 and Invoice.

5. On or about October 26, 2006 KGM executed a Delivery and Acceptance Notice for the equipment. Attached hereto as **EXHIBIT C** is a true and accurate copy of the Delivery and Acceptance Notice.

6. The Master Note #1 and related documents were sold, assigned and transferred to National City. Attached hereto as **EXHIBIT D** is a true and accurate copy of the Assignment.

7. KGM defaulted under the terms of Master Note #1 in that it has failed to make the required

monthly payments for September 20, 2007 and each month thereafter.

8.   The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

9.   Pursuant to paragraph 12 of the Master Note #1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

10.   Plaintiff has declared the Master Note #1 in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

11.   Pursuant to paragraph 12 of the Master Note #1 in the event KGM defaults under the terms of the Master Note #1, plaintiff is still further entitled to immediate and permanent title and possession of the equipment, which is the subject of the Master Note #1.

12.   Pursuant to paragraph 12 of the Master Note #1, in the event the defendant defaults, defendant is additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

13.   Pursuant to the terms of Master Note #1, plaintiff has declared Master Note #1 in default and demanded the accelerated balance, plus late charges, for a total of $33,824.82 as of June 4, 2008, plus accruing interest, late charges and any applicable taxes. This sum has been calculated as follows:

| | |
|---|---|
| Original Contract Balance | $43,604.75 |
| Less Payments Received | $ 9,966.80 |
| Principal Due | $33,637.95 |
| Sales Tax | $      0.00 |
| Late Charges | $    186.87 |
| **TOTAL** | **$33,824.82** |

3

## Transaction Two

14.  On or about August 21, 2006, KGM entered into and executed a Lease Agreement #88047000 ("Lease #1), as Lessee, with GE as  Lessor whereby KGM leased certain equipment, which is listed on the invoice (Equipment) attached to the Lease #1.  Attached hereto as **EXHIBIT E** is a true and accurate copy of the Lease #1 and Invoice.

15.  On or about August 18, 2006 KGM executed a Certificate of Acceptance for the equipment.  Attached hereto as **EXHIBIT F** is a true and accurate copy of the Certificate of Acceptance.

16.  The Lease #1 and related documents were sold, assigned and transferred to National City.  Attached hereto as **EXHIBIT G** is a true and accurate copy of the Assignment.

17.  KGM defaulted under the terms of Lease #1 in that it has failed to make the required monthly payments for August 20, 2007 and each month thereafter.

18.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

19.  Pursuant to paragraph 11 of Lease #1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

20.  Plaintiff has declared the Lease #1 in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

21.  Pursuant to paragraph 11 of Lease #1 in the event KGM defaults under the terms of the Lease #1, plaintiff is still further entitled to immediate and permanent title and possession of the equipment, which is the subject of the Lease #1.

22.  Pursuant to paragraph 11 of Lease #1, in the event the defendant defaults, defendant is additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

23.  Pursuant to the terms of the Lease #1, plaintiff has declared Lease #1 in default and demanded the accelerated balance, plus late charges, for a total of $33,208.64, as of June 4, 2008, plus accruing interest, late charges and any applicable taxes. This sum has been calculated as follows:

| | |
|---|---|
| Original Contract Balance | $41,638.74 |
| Less Payments Received | $ 8,832.46 |
| Principal Due | $33,082.46 |
| Sales Tax | $      0.00 |
| Late Charges | $    126.18 |
| **TOTAL** | **$33,208.64** |

### Transaction Three

24.  On or about October 30, 2006, KGM entered into and executed a Master Note and Security Agreement 88472000 ("Master Note #2), as Borrower, with GE as Lender whereby KGM purchased certain equipment, which is listed on the invoice (Equipment) attached to the  Master Note#2.  Attached hereto as **EXHIBIT H** is a true and accurate copy of the Master Note #2 and Invoice.

25.  On or about October 27, 2006 KGM executed a Delivery and Acceptance Notice for the equipment.   Attached hereto as **EXHIBIT I** is a true and accurate copy of the Delivery and Acceptance Notice.

26.  The Master Note #2 and related documents were sold, assigned and transferred to National City.  Attached hereto as **EXHIBIT J** is a true and accurate copy of the Assignment.

27.  KGM defaulted under the terms of  Master Note #2 in that it has failed to make the required monthly payments for September 20, 2007 and each month thereafter.

28.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

29.  Pursuant to paragraph 12 of the Master Note #2, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

30.  Plaintiff has declared the Master Note #2 in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

31.  Pursuant to paragraph 12 of Lease #1 in the event KGM defaults under the terms of the Master Note #2, plaintiff is still further entitled to immediate and permanent title and possession of the equipment, which is the subject of the Master Note #2.

32.  Pursuant to paragraph 12 of Master Note #2, in the event the defendant defaults, defendant is additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

33.  Pursuant to the terms of the Lease #1, plaintiff has declared Lease #1 in default and demanded the accelerated balance, plus late charges, for a total of $17,544.54, as of June 4, 2008, plus accruing interest, late charges and any applicable taxes. This sum has been calculated as follows:

| | |
|---|---|
| Original Contract Balance | $22,659.00 |
| Less Payments Received | $ 5,179.20 |
| Principal Due | $17,479.80 |
| Sales Tax | $       0.00 |
| Late Charges | $     64.74 |
| **TOTAL** | **$17,544.54** |

34.  In total, the defendants owe to plaintiff the sum of $84,578.00.

35.  The defendant is a corporation and therefore is not in the military service.


_____ /s/ Lisa Marie Moore
Lisa Marie Moore

Sworn to and subscribed
before me this 4th day
of June, 2008.


   /s/  Bobby Miller

Bobby Miller
Notary Public, State of Ohio
My Commission Expires 02/18/2013

7

**EXHIBIT A**

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ DISTRICT OF _____

National City Commercial Capital Company, LLC

## SUMMONS IN A CIVIL CASE

**V.**

CASE NUMBER:

KGM Circuit Solutions, LLC,

TO: (Name and address of defendant)

KGM Circuit Solutions, LLC
30 Wall Street, Suite 1100
New York, New York 10003

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____35_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons In a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

|  | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] |  |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant. Place where served: _____
_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐  Returned unexecuted: _____
_____
_____
_____

☐  Other *(specify):* _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
|  |  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                        Date                                                          Signature of Server

                                                                              _____
                                                                              Address of Server

---

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | | |
|---|---|---|
| NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC, | : : : | Case Number:<br>Judge |
| | : | ECF CASE |
| Plaintiff, | : : | COMPLAINT |
| vs. | : : | |
| KGM CIRCUIT SOLUTIONS, LLC, | : : | |
| Defendant. | : : | |

_____x

Plaintiff, National City Commercial Capital Company, LLC (hereinafter referred to as plaintiff or ("National City")), by way of complaint against the defendant, SAYS:

## JURISDICTION AND PARTIES

1.   This court has jurisdiction of the within cause of action pursuant to 28 U.S.C. 1332, plaintiff and defendant being citizens of different states and the amount in controversy exceeding Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

2.   Plaintiff, National City, is an Indiana LLC maintaining its principal place of business at 995

Dalton Avenue, Cincinnati, Ohio 45203.   National City has two members, to wit, National City

Bank and NCBO Holdings, Inc.  National City Bank is an Ohio corporation maintaining its principal

place of business at 1900 East Ninth Street, Cleveland, Ohio 44114. NCBO Holdings, Inc. is an

Indiana corporation maintaining its principal place of business at 1 National City Center, Suite 845E,

Indianapolis, Indiana 46255.

3.  Upon information and belief, defendant KGM Circuit Solutions, LLC ("KGM") is a New

York corporation with offices located at 30 Wall Street, Suite 1100, New York, New York 10003.

### AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

4.  On or about October 31, 2006, KGM entered into and executed Master Note and Security

Agreement # 88046000 ("Master Note #1"), as Borrower, with General Electric Capital Corporation

("GE") as Lender whereby KGM purchased certain equipment, which is listed on the invoices

(Equipment) attached to the Master Note #1.  Attached hereto as **EXHIBIT A** is a true and accurate

copy of the Master Note #1 and Invoice.

5.  On or about October 26, 2006 KGM executed a Delivery and Acceptance Notice for the

equipment.  Attached hereto as **EXHIBIT B** is a true and accurate copy of the Delivery and

Acceptance Notice.

6.  The Master Note #1 and related documents were sold, assigned and transferred to National

City.  Attached hereto as **EXHIBIT C** is a true and accurate copy of the Assignment.

7.  KGM defaulted under the terms of Master Note #1 in that it has failed to make the required

monthly payments for September 20, 2007 and each month thereafter.

8.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to

2

make payment of the remaining indebtedness.

9. Pursuant to the terms of the Master Note #1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

10. Plaintiff has declared the Master Note #1 in default and demanded the accelerated balance, plus late charges, for a total of THIRTY THREE THOUSAND EIGHT HUNDRED TWENTY FOUR DOLLARS AND 82/100 ($33,824.82) as of February, 2008 plus accruing interest and late charges.

11. Pursuant to the terms of Master Note #1 in the event KGM defaults under the terms of the Master Note #1, plaintiff is still further entitled to immediate and permanent title and possession of the equipment, which is the subject of the Master Note #1.

12. Pursuant to the terms of Master Note #1, in the event the defendant defaults, defendant is additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

13. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

14. On or about August 21, 2006, KGM entered into and executed a Lease Agreement #88047000 ("Lease #1), as Lessee, with GE as Lessor whereby KGM leased certain equipment, which is listed on the invoice (Equipment) attached to the Lease #1. Attached hereto as **EXHIBIT D** is a true and accurate copy of the Lease #1 and Invoice.

15. On or about August 18, 2006 KGM executed a Certificate of Acceptance for the equipment. Attached hereto as **EXHIBIT E** is a true and accurate copy of the Certificate of

3

Acceptance.

16.  The Lease #1 and related documents were sold, assigned and transferred to National City.  Attached hereto as **EXHIBIT F** is a true and accurate copy of the Assignment.

17.  KGM defaulted under the terms of Lease #1 in that it has failed to make the required monthly payments for August 20, 2007 and each month thereafter.

18.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

19.  Pursuant to the terms of the Lease #1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

20.  Plaintiff has declared the Lease #1 in default and demanded the accelerated balance, plus late charges, for a total of THIRTY THREE THOUSAND TWO HUNDRED EIGHT DOLLARS AND 64/100 ($33,208.64) as of February, 2008 plus accruing interest and late charges.

21.  Pursuant to the terms of Lease #1 in the event KGM defaults under the terms of the Lease #1, plaintiff is still further entitled to immediate and permanent title and possession of the equipment, which is the subject of the Lease #1.

22.  Pursuant to the terms of Lease #1, in the event the defendant defaults, defendant is additionally liable to plaintiff for, <u>inter alia</u>, contractual attorneys' fees.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

23.  Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

24.  On or about October 30, 2006, KGM entered into and executed a Master Note and

4

Security Agreement 88472000 ("Master Note #2), as Borrower, with GE as Lender whereby KGM purchased certain equipment, which is listed on the invoice (Equipment) attached to the Master Note#2. Attached hereto as **EXHIBIT G** is a true and accurate copy of the Master Note #2 and Invoice.

25. On or about October 27, 2006 KGM executed a Delivery and Acceptance Notice for the equipment. Attached hereto as **EXHIBIT H** is a true and accurate copy of the Delivery and Acceptance Notice.

26. The Master Note #2 and related documents were sold, assigned and transferred to National City. Attached hereto as **EXHIBIT I** is a true and accurate copy of the Assignment.

27. KGM defaulted under the terms of Master Note #2 in that it has failed to make the required monthly payments for September 20, 2007 and each month thereafter.

28. The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

29. Pursuant to the terms of the Master Note #2, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

30. Plaintiff has declared the Master Note #2 in default and demanded the accelerated balance, plus late charges, for a total of SEVENTEEN THOUSAND FIVE HUNDRED FORTY FOUR DOLLARS AND 54/100 ($17,544.54) as of February, 2008 plus accruing interest and late charges.

31. Pursuant to the terms of Lease #1 in the event KGM defaults under the terms of the Master Note #2, plaintiff is still further entitled to immediate and permanent title and possession of the

5

equipment, which is the subject of the Master Note #2.

32. Pursuant to the terms of Master Note #2, in the event the defendant defaults, defendant is additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

### AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

33. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

34. In entering into the transactions at issue, plaintiff and plaintiff's predecessor relied directly upon the express representations of defendant with regard to the Master Notes and Lease and related documents.

35. Defendant entered into the Master Notes and Lease and related documents full knowledge of plaintiff's and plaintiff's predecessor's reliance upon its representations therein and, indeed, it made said representations to induce plaintiff and plaintiff's predecessor to rely thereon.

36. Plaintiff has been injured as a direct and proximate result of the defendant's failure to honor the express representations in the Master Notes and Lease and related documents.

37. Based upon the foregoing, defendants are now estopped from disputing the representations in the Master Notes and Lease and related documents.

### AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

38. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

39. As a result of defendant's conduct as set forth above, defendant has been unjustly enriched.

40. Plaintiff is entitled to recovery under the doctrines of quasi contract, quantum meruit and

unjust enrichment and otherwise.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION

41. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

42. Defendant's actions as set forth above constitute an intentional and knowing conversion of the plaintiff's assets and property.

43. Plaintiff has been severely injured as a direct and proximate result of defendant's conversion of plaintiff's assets and property.

WHEREFORE, plaintiff demands judgment against the defendant, KGM Circuit Solutions, LLC, as follows:

On the First Count, in the amount of THIRTY THREE THOUSAND EIGHT HUNDRED TWENTY FOUR DOLLARS AND 82/100 ($33,824.82) and for immediate and permanent title and possession of the equipment which is the subject of the Master and Note #1; and

On the Second Count, in the amount of THIRTY THREE THOUSAND TWO HUNDRED EIGHT DOLLARS AND 64/100 ($33,208.64) and for immediate and permanent title and possession of the equipment which is the subject of the Lease #1; and

On the Third Count, in the amount of SEVENTEEN THOUSAND FIVE HUNDRED FORTY FOUR DOLLARS AND 54/100 ($17,544.54) and for immediate and permanent title and possession of the equipment which is the subject of the Master and Note #2; and

On the Fourth Count, in the amount of EIGHTY FOUR THOUSAND FIVE HUNDRED SEVENTY EIGHT DOLLARS AND 00/100 ($84,578.00) and for immediate and permanent title and possession of the equipment which is the subject of the two Master and Note agreements and the

Equipment Lease; and

On the Fifth Count, for the reasonable value of the equipment and monies provided to the defendant; and

On the Sixth Count, in the amount of EIGHTY FOUR THOUSAND FIVE HUNDRED SEVENTY EIGHT DOLLARS AND 00/100 ($84,578.00) and for immediate and permanent title and possession of the equipment which is the subject of the two Master and Note agreements Equipment Lease and for punitive damages; and

All of the above together with accruing interest from February, 2008, late charges, attorneys' fees, interest and costs and disbursements of this case and such other and further relief as this court may deem just and proper.

Dated: 7/3/( )

Frank Peretore, Esq.
PERETORE & PERETORE, P.C.
Attorneys for the Plaintiff
110 Park Street
Staten Island, New York 10306
(718) 667-8785

8

**EXHIBIT A**

GE Commercial Finance
Vendor Financial Services

## Master Note and Security Agreement

Agreement # 6616161

"Master Agreement" means this Master Note and Security Agreement. "Schedule" means any Payment Schedule signed by you and us that incorporates the terms of this Master Agreement. "Note" means this Master Agreement and any Schedule. "Lender" means General Electric Capital Corporation and is also referred to as "we", "us" and "our". "Borrower" means the entity or individual identified below and is also referred to as "you" and "your". "Equipment" means the equipment described on each Schedule. "Collateral" has the meaning given to such term in Section 5 below.

**1. COMMENCEMENT OF SCHEDULE.** Commencement of a Schedule (the "Commencement Date") will occur upon our funding of the Original Principal Balance of the Schedule to you or your designee; provided that we do not have to fund the Original Principal Balance of a Schedule to you or your designee unless on or before the Last Funding Date indicated on such Schedule (which is the date the credit approval for such Schedule expires): (a) we have received all required documentation (including confirmation of acceptance) in satisfactory form and substance and any required Advance Payment, (b) no material adverse change in your business, operations or financial condition occurs, and (c) no Default as described in Section 11 occurs and is then continuing. YOUR OBLIGATIONS TO REMIT PAYMENTS TO US UNDER EACH NOTE SHALL BE ABSOLUTE, UNCONDITIONAL AND NONCANCELLABLE, AND SHALL BE COMPLETELY INDEPENDENT OF ANY DEFECT OR DAMAGE TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR LOSS OF POSSESSION OR USE OF THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR ANY FAILURE ON THE PART OF ANY PARTY TO PERFORM ANY MAINTENANCE OR SERVICES RELATED TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR MAKE ANY PAYMENTS RELATED THERETO, AND SHALL NOT BE SUBJECT TO ANY SETOFFS, ABATEMENTS, SUSPENSIONS, DEFERMENTS, REDUCTIONS, CLAIMS, COUNTERCLAIMS OR DEFENSES OF ANY NATURE WHATSOEVER.

**2. DISCLAIMER. YOU ACKNOWLEDGE AND AGREE THAT:** (a) WE ARE NOT THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT (OR OF ANY OTHER COLLATERAL) OR ANY PART THEREOF OR THE REPRESENTATIVE OF EITHER THE SUPPLIER OR MANUFACTURER; (b) YOU HAVE SELECTED THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL AS SUITABLE FOR YOUR PURPOSES BASED SOLELY UPON YOUR OWN JUDGMENT WITHOUT ANY ASSISTANCE FROM US OR OUR AGENTS OR EMPLOYEES; (c) YOU EXPRESSLY DISCLAIM RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS OR EMPLOYEES; (d) THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL IS OF A DESIGN, SIZE, FITNESS AND CAPACITY SELECTED BY YOU AND THAT YOU ARE FULLY SATISFIED THAT THE SAME IS SUITABLE AND FIT FOR ITS PURPOSES; AND (e) WE DO NOT MAKE, HAVE NOT MADE, NOR SHALL WE BE DEEMED TO MAKE OR HAVE MADE, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO ANY PART OF THE EQUIPMENT OR (AS APPLICABLE) ANY OTHER COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FITNESS FOR ANY PARTICULAR PURPOSE, USE OR MERCHANTABILITY, OR ANY WARRANTY AS TO THE DESIGN, COMPLIANCE WITH SPECIFICATIONS, COMPLIANCE WITH APPLICABLE LAW, USE OR OPERATION OR CONDITION OR CAPACITY, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP, OR AS TO SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT. ALL SUCH RISKS, AS BETWEEN YOU, AND US ARE TO BE BORNE BY YOU. WE SHALL HAVE NO LIABILITY TO YOU OR TO ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE USE OF THE EQUIPMENT, ANY OTHER COLLATERAL, OR OTHERWISE.

**3. NOTE PAYMENTS; ADJUSTMENTS.** You agree to remit to us the Note Payments (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. Your Note Payment is calculated, in art, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of the Note as published in the Federal Reserve Statistical Release H.15 (available at http://www.federalreserve.gov/releases/h15/update/) on the date we either prepare the

corresponding Schedule or (if applicable) send you a written financing proposal/quote relating to the Equipment (the "Initial Rate Date"). The interest rate and your Note Payment may be adjusted if the Swap Rate as reported 4 business days prior to acceptance of the Equipment is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the interest rate changes. If the invoiced amount for the Equipment relating to a Schedule is more than the Original Principal Balance shown on that Schedule due to changes in Equipment configuration or other cost factors affecting such invoiced amount, and if such an increase is within the dollar limits and time limits of our credit approval, you authorize us to increase the Original Principal Balance by not more than 15% and adjust your Note Payment (using the Interest Rate then applying to the Schedule). We will notify you of any such adjustment.

**4. OTHER CHARGES.** You agree to: (a) pay all costs and expenses associated with the ownership, use, maintenance, servicing, repair or replacement of the Equipment and (as applicable) any other Collateral and (b) pay all premiums and other costs of insuring the Equipment and (as applicable) any other Collateral. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Note and (2) pay all other costs and expenses for which you are obligated under the Note, including any Document Fee specified in the Schedule (the "Other Charges"). You agree to file all required property and other tax returns and pay all property and other taxes promptly, which may be assessed against the Equipment or against any of the other Collateral. We may take on your behalf any action required under the Note, which you fail to take, and upon receipt of our invoice you will promptly pay our costs, plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. SECURITY INTEREST.** As security for the payment of any of your obligations and liabilities of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to us pursuant to this Master Agreement and any extensions and modifications hereof (any and all of which are sometimes referred to hereafter as the "Indebtedness"), you hereby give, grant and assign to us, our successors and assigns, a continuing first perfected security interest in the Equipment, all repairs, accessories, additions, parts, supplies, attachments, devices, replacements and substitutions for or accessions to such property, all software used in connection with such property, all insurance or other proceeds of such property, all accounts, contract rights, documents, instruments, accounts receivable, general intangibles, chattel paper and books and records directly or indirectly related to the foregoing and all your security deposits, revenues or other funds or property in possession of or in transit to us (all herein referred to collectively as the "Collateral"). You hereby authorize us to prepare and file, electronically or otherwise, a financing statement and any amendment thereto or continuation or assignment thereof relating to our interest in the Collateral, and containing any other information required by the applicable Uniform Commercial Code. A photostatic copy or other reproduction of this Master Agreement or of a financing statement shall be sufficient as a financing statement.

**6. LATE CHARGES.** For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

[Continued on next page]

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE WILL BE GOVERNED BY THE LAWS OF IOWA. BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS YOU AND WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS YOU AND WE MAY LATER AGREE IN WRITING TO MODIFY IT.

| GENERAL ELECTRIC CAPITAL CORPORATION | KGM CIRCUIT SOLUTIONS, LLC |
|---|---|
| 1010 Thomas Edison Blvd, Cedar Rapids, IA 52404 | Full Legal Name |
| | CIRCUIT SOLUTIONS |
| | D/B/A |
| By: _____ | By: _Kevin Gori_ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _Member_ |
| Date: _10/31/06_ | Date of Signature: _10/31/06_ |



GE Commercial Finance
Vendor Financial Services

**7. MAINTENANCE AND REPAIR.** You must keep the Equipment and any other Collateral free of liens (other than our lien). You may not remove the Equipment or (as applicable) any other Collateral from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment and any other Collateral in your exclusive control and possession; (b) USE THE EQUIPMENT AND ANY OTHER COLLATERAL ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment and any other Collateral in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment and (as applicable) any other Collateral repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and (as applicable) any other Collateral and the related maintenance and other records.

**8. INDEMNITY. YOU ARE RESPONSIBLE FOR ALL LOSSES, DAMAGES, CLAIMS, INFRINGEMENT CLAIMS, INJURIES AND ATTORNEYS' FEES AND COSTS** (collectively "CLAIMS"), INCURRED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE EQUIPMENT OR ANY OTHER COLLATERAL, INCLUDING THE USE, CONDITION OR POSSESSION OF SUCH EQUIPMENT OR SUCH OTHER COLLATERAL. YOU AGREE TO DEFEND AND INDEMNIFY US AGAINST ALL CLAIMS. ALTHOUGH WE RESERVE THE RIGHT TO CONTROL THE DEFENSE AND TO SELECT OR APPROVE DEFENSE COUNSEL. THIS INDEMNITY CONTINUES BEYOND THE TERMINATION OF THIS AGREEMENT AND/OR THE TERMINATION OF ANY SCHEDULE.

**9. LOSS OR DAMAGE.** If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us (along with repairing or replacing any other Collateral lost, stolen or damaged); or (b) pay us the sum of: (i) all past due and current Note Payments, (ii) the then remaining principal balance of the applicable Note (after application of item (b)(i)), and (iii) all Other Charges. In the event you exercise option (a) above and replace the Equipment, you will (A) notify us of such replacement within 30 days of the date the Equipment is lost, stolen or damaged and (B) replace the Equipment with an item of like or better kind of equipment by the same manufacturer. In the event you exercise option (b) above, we will then release our security interest in the Collateral. Insurance proceeds will be applied toward repair, replacement or payment hereunder, as applicable.

**10. INSURANCE.** You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming you and us as loss payees as our interests may appear; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we may require, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Upon our request, prior to the Commencement Date of a Schedule and at any time thereafter, you must provide us with evidence of such insurance coverages.

**11. DEFAULT.** You will be in default ("Default") under the Note if: (a) you fail to remit to us any payment within 10 days of the due date or breach any other obligation under the Note; (b) a petition is filed by or against you under any bankruptcy or insolvency law; or (c) you default under any other agreement with us or any of our affiliates.

**12. REMEDIES.** Upon the occurrence of a Default, we, at our option, may declare all of the obligations and liabilities secured by this Master Agreement and all Notes to be immediately due and payable, without demand or notice to you. The obligations and liabilities accelerated thereby shall bear interest at the lower of 18% per annum or the maximum rate allowed by applicable law. Upon the occurrence of a Default, we may, in our sole discretion, elect to foreclose or realize upon the Collateral. Should we elect to foreclose or realize upon the Collateral, you expressly agree that your rights under and interests in the Collateral shall be (to the maximum extent permitted under applicable law) automatically, and without any further action required of any party, assigned and conveyed to us, but that we shall have no obligations or liabilities related to the Collateral, all of which shall remain with you. You agree to execute and deliver to us (or our designee) such agreements, documents and instruments as may be necessary, in our sole discretion, to effect such assignment and conveyance. Upon such assignment and conveyance, you expressly acknowledge that we may exercise any of the rights related to the Collateral to the exclusion of you. In addition, we may exercise all rights and remedies available to us under the law and Uniform Commercial Code as now

enacted or as may be from time to time amended and, in conjunction with, addition to or substitution for these rights and remedies, at our discretion, we may, in conformity with applicable law (i) enter upon your premises and take possession of, assemble and collect the Collateral or to render it unusable, (ii) require you to assemble the Collateral and make it available at a place we designate which is mutually convenient, to allow us to take possession or dispose of the Collateral, (iii) sell the Collateral at public or private sale, whether or not the Collateral is in our constructive possession, in one or more sales, as an entirety or in parcels, and be, at our election, the purchaser at any such sale; and/or (iv) lease or otherwise dispose of all or part of the Collateral applying the resulting proceeds to all expenses in connection with the taking and sale or lease of Collateral, and any balance of such proceeds toward the payment of your obligations in such order of application as we may from time to time elect, provided that any proceeds we receive in excess of your obligations will be remitted to you or (as the case may be) the party otherwise lawfully entitled thereto.

Without limitation to the foregoing, it is agreed that upon 5 days' notice to you and within 6 months of repossession (i) any private sale of the Collateral in "as is" condition at wholesale including, without limitation, sales based on bids received from dealers, manufacturers or otherwise, or (ii) any lease of the Collateral, in both event without the need for advertising, shall be a commercially reasonable disposition of the Collateral. In no event will blue book, black book, NADA or other published price lists be determinative of the commercial reasonableness of any disposition of the Collateral. Notwithstanding any repossession or any other action which we may take with respect to the Collateral, you shall be and remain liable for any deficiency and for the full performance of all obligations on your part to be performed. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately.

**13. ASSIGNMENT. YOU MAY NOT ASSIGN OR DISPOSE OF ANY RIGHTS OR OBLIGATIONS UNDER THE NOTE OR WITH RESPECT TO THE EQUIPMENT OR WITH RESPECT TO ANY OTHER COLLATERAL OR LEASE THE EQUIPMENT, WITHOUT OUR PRIOR WRITTEN CONSENT.** We may, without notifying you, (a) assign all or any portion of our interest in the Note or all or any portion of our interest in the Equipment or any other Collateral; and (b) release information we have about you and the Note to the manufacturer, supplier or any prospective investor, participant or purchaser of the Note. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under the Note (to the extent of such assignment), but none of our obligations (unless we and such assignee agree otherwise in writing). You agree not to assert against our assignee claims, offsets or defenses you may have against us.

**14. MISCELLANEOUS.** Notices must be in writing and will be deemed given 5 days after mailing to your or (as the case may be) our business address. You represent that: (a) you have authority to enter into the Note and by so doing you will not violate any law or agreement; and (b) the Note is signed by your authorized officer, representative or agent. The Note is the entire agreement between you and us, and cannot be modified except by another document signed by you and us. The Note is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our representatives to: (a) obtain credit reports and make credit inquiries; and (b) furnish your payment history to credit reporting agencies. Any claim you have against us must be made within 2 years after the event, which caused it. If a court finds any provision of the Note to be unenforceable, all other terms will remain in effect and enforceable. You authorize us to insert or correct missing information on the Note, including the Commencement Date, your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege.

**15. LIMITATIONS ON CHARGES.** This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Note. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstances to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Note to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Note, or refunded to you.

Borrower's initials



**GE Capital**

GE CAPITAL
P.O. BOX 642555
PITTSBURGH PA 15264-2555

**Our Federal Tax ID # 131500700**

10/22/07  A1  0000001  GEVIAS01  001  002  1-OUNCE       98014B  12/07/00  12:00

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

Questions????  800-327-9701
Fax:    319-841-6324

Correspondence Only: PO BOX 3083
CEDAR RAPIDS IA 52406-3083

| Billing ID Number | 90133740842 |
|---|---|
| Invoice Number | 66089380 |
| Invoice Date | 09/09/2007 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,308.14 |
| Total Amount Due: | 3,862.13 |

CEFNE

000

## INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase Order Number / Equipment Description | Line Item Amount | Acct/Sched Total |
|---|---|---|---|---|
| 4416161-005* | | REFERENCE NUMBER    4416161008<br>SYSTEM SOFTWARE-CURRENT GA<br>- LOCATION:<br>30 WALL ST<br>NEW YORK NY 10003 | | |
| | 10/01/2007 | PAYMENT/INSTALLMENT DUE | 1,245.85 | |
| | 08/01/2007 | LATE CHARGES DUE | 62.29 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

*To ensure proper credit, detach and return this portion with your payment. Please include your billing ID Number on your check.*

| Billing ID Number | 90133740842 |
|---|---|
| Invoice Number | 66089380 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,308.14 |
| Total Amount Due: | 3,862.13 |

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

*Please check here if your address or equipment location has changed and complete reverse side.*

CEFNE

000

ԼɭɭɭԼɭɭɭɭɭɭɭԼɭɭɭɭɭɭɭɭԼɭɭɭɭɭɭɭԼɭɭɭɭɭɭɭ
*Make Checks Payable and Remit to:*

ԼɭɭɭɭɭԼɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭɭԼɭ
GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

5901337408426608938000000130814000003862136608938038818

**EXHIBIT B**



**GE Commercial Finance**
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 005

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS, LLC

Lender Name: GENERAL ELECTRIC CAPITAL
CORPORATION

| Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | SYSTEM SOFTWARE - CURRENT GA RELEASE | |
| | ☒ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof | |

Equipment Location: 30 WALL STREET , NEW YORK, NY 10005

Equipment Supplier: EASTERN RESEARCH, INC.

**ACCEPTANCE NOTICE** As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date");
(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;
(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;
(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS, LLC

By: X _____

Name: X  Kevin Gurl

Title: X  Member

Acceptance Date: X  10/26/06

 **GE Commercial Finance**
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KCM CIRCUIT SOLUTIONS, LLC
4416161005

| DESCRIPTION | QTY |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 4 Slot Equipment Nest - 24VDC | |
| DNX 4 Slot Equipment Nest - AC | |
| DNX 4 Slot Equipment Nest - 48 V DC | |
| DNX 11 Slot Equipment Nest | |
| DC Power Supply ( for 11 slot nest) | |
| AC Power Supply (for 11 slot nest) | |
| SMC II w/Stratum 3 clk | |
| Expansion Node Manager (XNM) | |
| SMC IIA or XNM rear module | |
| Expansion Node Cross Connect App (XCC) | |
| Expansion Node Cross Connect I/F (XCC) | |
| Expansion Link Controller Module (XLC) | |
| Single STS-1 Application Module | |
| Single STS-1 Interface Module | |
| Hybrid DS-3 Application Module | 4 |
| Hybrid DS-3 Interface Module | 4 |
| Octal T1/E1 Application Module | |
| Octal T1/E1 with APS Application Module | |
| Octal T1/E1 Interface Module | |
| Octal HSD Application Module | |
| Octal HSD Interface Module | |
| Quad OCUDP Application Module | |
| Quad OCUDP Interface Module | |
| Router/8 Application Module | |
| Router/8 Interface Module | |
| Octal Voice Application Module | |
| Octal 4 Wire E & M Interface Module | |
| Octal 2 Wire FXO/DPT Interface Module | |
| Octal 2 Wire FXS Interface Module | |
| STM1 Application Module | |
| STM1X (X-Link) Application Module | |
| OC3 Application Module | |
| OC3X (X-Link) Application Module | |
| STM1/OC3 Inter. range Interface Module | |
| STM1/OC3 Long range Interface Module | |
| Octal DS0-DP Application Module | |
| Octal DS0-DP Interface Module | |
| E3 Application Module | |
| E3 Interface Module | |
| DNX Family Product Documentation CD-ROM | 1 |

Lessee Initials: X [signature]     Date: [handwritten]

**GE Commercial Finance**
Vendor Financial Services

## N+1 Switch

| | |
|---|---|
| N+1 Protection Switch (for DNX 11 only) | |
| N+ 1 Switch Controller Card | |
| N+1 Switch DC Power Supply | |
| N+1 Narrowband Primary Card | |
| N +1 Narrowband Redundant Card | |
| N +1 Broadband-E Primary Card | 1 |
| N +1 Broadband-E Redundant Card | |

## SUBTOTAL - N+1 Switch Products

### Cables & Accessories

| | |
|---|---|
| N +1 Switch Blank Bezels | |
| Blank bezel for front system manager slots | |
| Blank bezel for front application slots | |
| Blank bezel for rear interface slots | |
| Blank bezel for power supply slots - DNX-11 | |
| VAC to VDC Power Converter (1.5A) | |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable | |
| 50 pin telco to bare wire cable | |
| Harmonica Adapter 50 pin F to 8 RJ-48C | |
| Broadband M/M Coaxial Cable | |
| Expansion cable - XCC to XLC (10') | |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| PSX Flush 23" Rack Mount Adapter Kit | |
| PSX Center 23" Rack Mount Adapter Kit | |

| | |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 11 Slot Equipment Nest | 1 |
| DC Power Supply ( for 11 slot nest) | 0 |
| AC Power Supply (for 11 slot nest) | 2 |
| SMC II w/Stratum 3 clk | 2 |
| Expansion Node Manager (XNM) | 0 |
| SMC II or XNM rear module | 0 |
| SMC IIA or XNMa rear module | 1 |
| Expansion Node Cross Connect App (XCC) | 0 |
| Expansion Node Cross Connect I/E (XCC) | 0 |
| Expansion Link Controller Module (XLC) | 2 |
| Single STS-1 Application Module | 0 |
| Single STS-1 Interface Module | 0 |
| Hybrid DS-3 Application Module | 1 |
| Hybrid DS-3 Interface Module | 1 |
| Octal T1/E1 Application Module | 0 |
| Octal T1/E1 with APS Application Module | 0 |
| Octal T1/E1 Interface Module | 0 |
| Octal HSD Application Module | 0 |
| Octal HSD Interface Module | 0 |
| Quad OCUDP Application Module | 0 |
| Quad OCUDP Interface Module | 0 |

Lessee Initials: X_____    Date: 10/26/06

**GE Commercial Finance**
Vendor Financial Services

| | |
|---|---|
| Single Router Application Module | 0 |
| Single Router Interface Module | 0 |
| Router/8 Application Module | 0 |
| Router/8 Interface Module | 0 |
| Octal Voice Application Module | 0 |
| Octal 4 Wire E & M Interface Module | 0 |
| Octal 2 Wire FXO/DPT Interface Module | 0 |
| Octal 2 Wire FXS Interface Module | 0 |
| STM1 Application Module | 0 |
| OC3 Application Module | 0 |
| OC3/STM1 Optical Nest (X-link) Software | 0 |
| STM1/OC3 Inter. range Interface Module | 0 |
| STM1/OC3 Long range Interface Module | 0 |
| Octal DS0-DP Application Module | 0 |
| Octal DS0-DP Interface Module | 0 |
| E3 Application Module | 0 |
| E3 Interface Module | 0 |

| | |
|---|---|
| DNX Family Product Documentation CD-ROM | 0 |

| N+1 Switch | QTY |
|---|---|
| N +1 Protection Switch (for DNX 11 only) | 1 |
| N+ 1 Switch Controller Card | 1 |
| N +1 Switch DC Power Supply | 2 |
| N+1 Narrowband Primary Card | 0 |
| N +1 Narrowband Redundant Card | 0 |
| N +1 Broadband-E Primary Card | 0 |
| N +1 Broadband-E Redundant Card | 1 |

| Cables & Accessories | |
|---|---|
| N +1 Switch Blank Bezels | 7 |
| Blank bezel for front system manager slots | 0 |
| Blank bezel for front application slots | 5 |
| Blank bezel for rear Interface slots | 7 |
| Blank bezel for power supply slots - DNX-11 | 0 |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable - 15Ft | |
| 50 pin telco to bare wire cable - 15Ft | 0 |
| Harmonica Adapter 50 pin F to 8 RJ-48C | |
| Broadband M/M Coaxial Cablem - 15Ft | |
| Expansion cable - XCC to XLC (10') | 4 |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| DSX Flush 23" Rack Mount Adapter Kit | |
| DSX Center 23" Rack Mount Adapter Kit | |

Lessee Initials: N ___ Date: 10/26/00

**EXHIBIT C**



Equipment Finance Services

10 Riverview Drive
Donbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY 10005

Re:     Notice of Assignment - Equipment Schedule No. 4416161-005 (the "Designated Schedule")
        incorporating by reference the terms and conditions of that certain Master Note and Security
        Agreement dated as of October 31, 2006, both between General Electric Capital Corporation ("GE")
        and KGM Circuit Solutions LLC ("Customer").

Ladies and Gentlemen:

        GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents. From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____

Name: JoEllen Bentson

Title:  Capital Markets Operations - Syndications

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____

Name:  THOMAS C. OTTO

Title:  VICCE PRESIDENT

**EXHIBIT D**



# Lease Agreement
### Lease Number 4416161003

| | |
|---|---|
| **LESSEE NAME:** KGM CIRCUIT SOLUTIONS, LLC | **SUPPLIER NAME:** EASTERN RESEARCH, INC. |
| **TRADE/DBA NAME:** CIRCUIT SOLUTIONS | |
| **ADDRESS:** 30 WALL STREET | **ADDRESS:** 225 EXECUTIVE DRIVE |
| **CITY, STATE, ZIP:** NEW YORK, NY 10005 | **CITY, STATE, ZIP:** MOORESTOWN, NJ 08057 |
| **CONTACT:** GARY PRESTIPINO  PH: (212) 791-3809 | **CONTACT:** PH: (800) 337-4374 |

**EQUIPMENT ADDRESS**
**ADDRESS:** 30 WALL STREET, NEW YORK, NY 10005

## SCHEDULE OF EQUIPMENT

| Qty | Description of Equipment & Serial Number | | Total Cost | |
|---|---|---|---|---|
| | DATA/VOICE HARDWARE | | EQUIPMENT | $39,104.00 |
| | | | | |
| | | | | |
| | | | | |
| ☒ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof. | | | Total Cost: | $39,104.00 |

## SCHEDULE OF RENTAL PAYMENTS

| Lease Term (In Months) | Total Number of Rental Payments | Amount of Each Rental Payment (Plus Applicable Taxes) | Advance Payment (Plus Applicable Taxes) | Documentation Fee | End of Lease Purchase Option |
|---|---|---|---|---|---|
| 36 | 36 | $1,261.78 | $0.00 | $100.00 | ☒ $1.00 Purchase Out |
| | | | | | Last Funding Date: 08/06/06 |

**Additional Provisions:**

Important Notice: We have written this Lease in plain language because we want you to understand its terms. Please read this Lease carefully. The words "you" and "your" mean the Lessee named below. The words "we", "us", and "our" refer to the Lessor named below. BY SIGNING THIS LEASE, YOU AGREE TO THE TERMS ON THE FRONT AND REVERSE SIDES OR SUBSEQUENT PAGES, INCLUDING ALL THE TERMS AND CONDITIONS. THIS LEASE IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US. YOU CERTIFY THAT ALL THE INFORMATION CONTAINED IN THIS LEASE AND YOUR APPLICATION IS CORRECT AND COMPLETE. THIS LEASE IS NOT BINDING UPON US UNTIL WE SIGN IT.

Execution and Delivery of Lease This Lease will be created and evidenced as follows: (i) we will deliver to you (at the e-mail, facsimile or business address you provide to us) an electronic (e-mail or facsimile) or paper version of each document to be signed by you, including this Lease and any exhibits or related documents (each, a "Document"); (ii) you will print (if applicable) and manually sign the signature page of each Document and deliver to us by facsimile or other means the signed signature page; (iii) we will manually sign each signature page so delivered by you (if the Document requires your signature); and (iv) we will attach each fully signed signature page to a printed paper copy of the applicable Document. By so signing and transmitting a Document to us, you confirm your intent to sign such Document and accept its terms. You acknowledge that we are relying upon your promise that you have not modified the Document sent to you for signature. We both intend that each Document produced by this process which contains our original manual signature shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document. We will promptly send you a copy of each fully signed Document and will retain each original authenticated Document, which will be conclusively presumed to be identical to the version signed by you unless you deliver specific written objections thereto within three (3) business days after receipt of such copy.

| **LESSOR: GENERAL ELECTRIC CAPITAL CORPORATION** | **LESSEE: KGM CIRCUIT SOLUTIONS, LLC** |
|---|---|
| By: _(signature)_ | Signature: X _Gary Prestipino_ |
| Name & Title: _(signature)_ | Name & Title: X Gary Prestipino  SVP Operations |
| Date: _8/8/06_ | Date: X 5-12-2006  Fed Tax ID or SSN: X 14 184 8051 |

Unconditional Personal Guarantee: In consideration of Lessor entering into the above Lease in reliance on this Guarantee, the undersigned, jointly and severally, if more than one, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, to Lessor, its successors and assigns, the prompt payment and performance of all obligations of Lessee under the Lease, whether such obligations are now or hereafter existing. The undersigned agrees that (a) this is an absolute, unconditional and continuing guarantee of payment and not of collection and that Lessor can proceed directly against the undersigned without disposing of any security or seeking to collect from Lessee under the Lease, (b) the undersigned waives all defenses and notices, including those of protest, presentment and demand, (c Lessor may renew, extend or otherwise change the terms of the Lease without notice to the undersigned and the undersigned will be bound by such changes, and (d) the undersigned will pay all of Lessor's costs of enforcement and collection. This Guarantee survives the bankruptcy of Lessee and binds the undersigned's administrators, successors and assigns. The undersigned's obligations under this Guarantee continue even if Lessee becomes insolvent or bankrupt or is discharged from bankruptcy and the undersigned agrees not to be repaid by Lessee in the event the undersigned must pay Lessor. THIS GUARANTEE WILL BE GOVERNED BY THE LAWS OF THE STATE OF IOWA. EACH OF THE UNDERSIGNED AGREES TO JURISDICTION AND VENUE IN THE STATE OF IOWA. Each of the undersigned authorizes Lessor to conduct an investigation of his/her/its credit history and directs his/her/its creditors (including banks, leasing companies and trade suppliers) to release information regarding his/her/its credit to Lessor, its successors and assigns. Each of the undersigned authorizes Lessor to release all information that Lessor may possess about him/her/it to any prospective purchaser of the lease.

| Guarantor: | Guarantor: |
|---|---|
| Signature: X | Signature: X |
| Name & Title printed (if Entity): X | Name & Title printed (if Entity): X |

(Page 1 of 2)

## Terms and Conditions

1. COMMENCEMENT OF LEASE; RENTAL PAYMENTS. You agree to lease from us the Equipment described in this Lease and remit to us Rental Payments (and applicable taxes) for the full Lease Term. Rental Payments will include any freight, delivery, installation and other expenses we finance on your behalf at your request. When you receive the Equipment, you agree to inspect it and to verify by telephone such information as we may require or, at our request, send us a written certificate of acceptance. We do not have to accept this Lease and we are not obligated to purchase a unit of Equipment from Supplier or lease a unit of Equipment to you unless on or before the Last Funding Date indicated on the cover page of this Lease (which is the date the credit approval for this Lease expires): (a) we have received all required documentation in satisfactory form and substance, (b) you have accepted the Equipment in accordance with the terms set forth below, (c) we have received any required Advance Payment, (d) no material adverse change in your business, operations or financial condition occurs, and (e) no Event of Default as described in Section 10 occurs and is then continuing. If we do not accept this Lease, we will return to you any Advance Payment. If all the conditions precedent set forth above have been met and we have accepted this Lease, the Lease Term begins on the date you accept the Equipment (the "Lease Commencement Date"). ONCE WE ACCEPT THIS LEASE, YOU MAY NOT CANCEL IT DURING THE LEASE TERM. If the Lease Commencement Date is not the first or the fifteenth day of any calendar month (a "Payment Date"), the Lease Term will be extended by the number of days between the Lease Commencement Date and the Payment Date which first occurs after the Lease Commencement Date, and your first payment will be increased by 1/30th of the monthly Rental Payment multiplied by the number of days elapsed from the Lease Commencement Date to the day immediately preceding the first Payment Date after the Lease Commencement Date. You authorize us to change the Rental Payment by not more than 15% due to changes in the Equipment configuration or other factors affecting Equipment Cost which may occur prior to our acceptance of this Lease. We will advise you of the due date of each Rental Payment in which you must send your payments, but our failure to so advise you will not release you of your obligations under this Lease. Rental Payments are due whether or not you receive an invoice. Unless otherwise required by applicable law, we are not required to refund any Rental Payment, pay any interest on any Advance Payment, or keep any Advance Payment in a separate account. We may apply the Advance Payment to any amount you owe us under this Lease. Lease Rate Factor: The periodic Rental Payments are calculated using a lease rate factor (the "Lease Rate Factor"). The Lease Rate Factor is calculated, in part, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of this Lease as published in the Federal Reserve Statistical Release H.15 available at http://www.federalreserve.gov/releases/h15/update/ on or about the date this Lease is prepared by us (the "Initial Rate Date"). The Lease Rate Factor and your periodic Rental Payments may be adjusted if the Swap Rate as reported four (4) business days prior to acceptance of the Equipment is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the Lease Rate Factor changes. Notwithstanding the foregoing, if this is a Stated Purchase Option Lease and the Lease Rate Factor is provided to you on or before December 31st of any calendar year, but the Lease Commencement Date occurs on or after January 1st of the following calendar year, then the Lease Rate Factor and your periodic rental payment will be adjusted to preserve our tax economic yields and cash flows and we will notify you of any such adjustments.

2. TAXES. You agree to pay us, when invoiced, all sales and use taxes and other similar charges imposed relative to this Lease, the Rental Payments or the Equipment. If the Purchase Option amount is $1.00 (a "Dollar Purchase Option"), you agree to file any required personal property tax returns and if we ask, provide us with proof of payment. If the Purchase Option amount is other than $1.00 (a "Stated Purchase Option"), you agree at our option to either (a) reimburse us for all personal property taxes which we may be required to pay as the owner of the Equipment or (b) remit to us each month our estimate of the monthly equivalent of the annual personal property taxes to be assessed. If an increase in the federal corporate income tax rate or a change in the "accelerated cost recovery deductions" allowed by the Internal Revenue Code of 1986, as amended, adversely affects our after-tax earnings on this Lease, we may increase the Rental Payments to offset such adverse effect and a change in the Rental Payments is effective on the effective date of such increase.

3. NET LEASE. THIS LEASE IS A NET LEASE AND YOUR PAYMENT OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, ABATEMENT, REDUCTION, RECOUPMENT, DEFENSE OR SETOFF FOR ANY REASON WHATSOEVER.

4. OWNERSHIP. If this Lease provides for a Dollar Purchase Option, you will have title to the Equipment and will be deemed to be the owner of the Equipment and will be entitled to all tax benefits. If this Lease provides for a Stated Purchase Option, we will have title to the Equipment unless and until you exercise any Purchase Option available to you at the end of the Lease Term. To secure your obligations to us under this Lease, you grant us a first priority security interest in the Equipment and all related proceeds. You irrevocably grant us the power to prepare, sign on your behalf (if applicable), and file, electronically or otherwise, a financing statement and any amendment thereto or continuation thereof relating to the Equipment, and containing any other information required by the applicable Uniform Commercial Code. At our request, you will attach identifying labels supplied by us showing our interest in a prominent position on each unit of Equipment.

5. MAINTENANCE. You will, at your own expense, (a) keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted, free of all claims, liens and encumbrances of any kind or nature, (b) not move the Equipment from the Equipment Location without our prior written consent, (c) use the Equipment solely for commercial purposes in the manner for which it is intended and in compliance with all applicable laws and manufacturer requirements or recommendations, (d) perform all service and maintenance requirements described in the operator's and instrument manuals provided by the manufacturer or Supplier and keep the Equipment eligible for any manufacturer's warranty certification, and (e) give us reasonable access to inspect the Equipment and its maintenance and other records. All additions, upgrades, replacement parts and attachments will become part of the Equipment unless they can be easily removed without damage to the original Equipment. You will not attach any of the Equipment to any real estate. Upon our reasonable request and at your cost, you will get each person with an interest in the real estate where the Equipment is located to waive any rights they may have in the Equipment.

6. DISCLAIMER OF WARRANTIES. You have selected the Equipment. You acknowledge that the Supplier, the manufacturer of the Equipment and their respective representatives are not our agents and are not authorized to modify the terms of this Lease. You are aware of the name of the manufacturer or Supplier of each item of Equipment and you will contact the manufacturer or Supplier for a description of your warranty rights. You agree to settle any dispute you may have regarding performance of the Equipment with the manufacturer or Supplier of the Equipment. WE ARE LEASING THE EQUIPMENT TO YOU "AS-IS". WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES REGARDING THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, ITS DESIGN, MERCHANTABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. WE SHALL HAVE NO LIABILITY TO YOU OR ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE EQUIPMENT OR THIS LEASE. WE WILL NOT BE LIABLE FOR SPECIFIC PERFORMANCE OF THIS LEASE OR FOR ANY LOSSES, DAMAGES, DELAY OR FAILURE TO DELIVER THE EQUIPMENT. THIS LEASE CONSTITUTES A "FINANCE LEASE" AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE. You agree to waive all rights and remedies conferred upon a lessee by Article 2A (Sections 508-522) of the Uniform Commercial Code. To the extent permitted by applicable law, you also hereby waive any rights now or hereafter conferred by statute or otherwise that may limit or modify any of our rights or remedies under this Lease, including any rights you may have which require us to (a) sell any Equipment to mitigate damages or (b) provide you with notices of default, intent to accelerate amounts becoming due or acceleration of such amounts. If you signed a purchase order for the Equipment, you assign to us, without further action on your or our part, all of your right but none of your obligations with respect to the Equipment and any proceeds thereof and agree to, upon our request, obtain consent from the manufacturer or Supplier of Equipment with respect to such assignment. Unless you are in default under this Lease, you may at your own expense enforce all warranties and other rights directly against the manufacturer.

7. INDEMNITY. You are responsible for, and agree to defend and indemnify us against, all losses, damages, claims, injuries and attorneys' fees incurred or asserted by any person that relate to the Equipment. We reserve the right to control the defense and to select or approve defense counsel. This indemnity survives the expiration or termination of this Lease. If this Lease provides for a Stated Purchase Option, you agree that it was entered into on the assumption that we will be entitled to certain tax benefits available to the owner of the Equipment, and you agree to indemnify us for the loss of any income tax benefits caused by your acts or omissions.

8. LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged, you will (and Rental Payments will continue to accrue without abatement until you), at your option and cost, either (1) repair the item or replace the item with a comparable item reasonably acceptable to us, or (b) pay us a sum equal to (1) all Rental Payments and other amounts then due and payable under this Lease, and (2) the present value of (i) all Rental Payments to become due during the remainder of the Lease Term and (ii) the Purchase Option amount set forth in this Lease, each discounted at (x) 6% per annum if this Lease provides for a Stated Purchase Option, (y) the lease charge rate (as determined pursuant to Section 16) if this Lease provides for a Dollar Purchase Option, or (z) if such applicable rate is not permitted by law, then at the lowest rate permitted by law (collectively referred to as the "Net Book Value"). We will then transfer to you all our right, title and interest in the Equipment "AS-IS, WHERE-IS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER. Insurance proceeds will be applied toward repair or replacement of the Equipment or payment hereunder, as applicable.

9. INSURANCE. You are responsible for loss and damage to the Equipment from any cause whatsoever on and after delivery thereof. You agree, at your cost to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we require, naming us as additional insured. Prior to commencement of this Lease and at any time upon our request, you must provide us with evidence of an occurrence type insurance policy covering such risks and liabilities issued by an insurance carrier acceptable to us. The policy must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us.

Flow Document Package

(Continued on Next Page)

(Page 2 of 2)

## Terms and Conditions

10. **DEFAULT.** An Event of Default will occur if: (a) we do not receive any Rental Payment or other payment within 10 days of its due date, (b) you or any guarantor of your obligations under this Lease ("Guarantor") do not perform any of your or any Guarantor's other obligations under this Lease or such Guarantor's guaranty, and such failure continues for 10 days after we notify you of it, (c) any representation you have made in this Lease or any Guarantor has made in its guaranty shall prove to have been false or misleading in any material respect (d) you or any Guarantor become insolvent, are liquidated or dissolved, merge, transfer substantially all of your or its stock or assets, stop doing business or assign your or its rights or property for the benefit of creditors, (e) a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law, (f) if you are a sole proprietorship, you die or have a guardian appointed, (g) any Guarantor dies or has a guardian appointed, or (h) you default on any other agreement between you and us (for our affiliates).

11. **REMEDIES.** If an Event of Default occurs, we may, in our sole discretion, do any or all of the following: (a) cancel or otherwise terminate this Lease or any other Lease or agreement between you and us, (b) require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, a sum equal to the Net Book Value, (c) require you to return the Equipment in accordance with Section 13, (d) repossess the Equipment without court order and you will not make any claims against us for our agents) for damages or trespass or any other reason if we take such action, and (e) exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, including attorneys' fees. We may, but will have no obligation to, sell or otherwise dispose of the Equipment, with or without notice to you, at a public or private sale, and without any duty to account to you with respect to such action or inaction or for any proceeds with respect thereto. You agree that (i) if notice of sale is required by law, five days advance notice will constitute reasonable notice, (b) we may apply the proceeds of any sale or other disposition of the Equipment (after deducting all costs and expenses related to the repossession, sale or other disposition) to the amounts you owe us, (c) you will remain responsible for any balance which may remain after we apply such net proceeds, and (d) we will retain all rights and remedies even if we do not choose to enforce them at the time of your default. If this Lease provides for a Dollar Purchase Option and we receive more than the Net Book Value plus our costs and expenses, we will remit any excess to you.

12. **END OF LEASE OPTIONS.** If this Lease provides for a Dollar Purchase Option and you are not in default, we will release any security interest we have in the Equipment at the end of the Lease Term. If this Lease provides for a Stated Purchase Option and you are not in default, you will have the option at the end of the Lease Term to (a) return the Equipment in accordance with Section 13, (b) extend the Lease Term for a new term upon the terms and conditions set forth in this Lease, or (c) on 60 days advance written notice to us, purchase all but not less than all of the Equipment for the Purchase Option amount (and all applicable taxes). If the Purchase Option is stated as a percentage, the Purchase Option amount will be the product of such percentage multiplied by the final Equipment Cost. If the Purchase Option is stated as FMV, FMV will mean the fair market in place value of the Equipment at the end of the Lease Term, assuming good condition (except for ordinary wear and tear), as estimated by us. Upon payment of the applicable amount, we will transfer the Equipment to you "AS IS, WHERE IS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER. IF YOU FAIL TO EXERCISE THE PURCHASE OPTION, ALL OF YOUR OBLIGATIONS UNDER THIS LEASE WILL CONTINUE UNTIL THE EQUIPMENT IS RETURNED IN ACCORDANCE WITH SECTION 13.

13. **RETURN OF EQUIPMENT.** If (a) an Event of Default occurs, (b) you do not purchase the Equipment at the end of the Lease Term, or (c) you do not extend the Lease Term, at your cost and risk you will promptly (i) place the Equipment in good order and condition (except for ordinary wear and tear from normal use), (ii) cause the Equipment to be disassembled, deinstalled, inspected, tested and crated in accordance with the manufacturer's recommendations and any and all local, state and federal regulatory requirements then in effect, (iii) immediately return the Equipment, freight and insurance prepaid, at your risk to any location and aboard any carrier we may designate in the continental United States, and (iv) pay a return fee of $100, not to exceed the maximum permitted by law, as reasonable compensation for our costs in processing returned Equipment. Any such Equipment will be accompanied by all accessories originally included with the Equipment, qualifies (if applicable) for continued maintenance under a manufacturer's service and maintenance contract, and includes the latest software release provided by the manufacturer or Supplier to you. You will continue to remit Rental Payments until the first day of the month which follows the date the Equipment is received by us in the condition required by this Lease.

14. **ASSIGNMENT. YOU WILL NOT SELL, ASSIGN OR SUB-LEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE, OR FILE OR PERMIT A LIEN TO BE FILED AGAINST THE EQUIPMENT.** We may, without notifying you, (a) release any information we possess about you and this Lease to any prospective investor, participant or purchaser of this Lease, and (b) sell, assign, or transfer this Lease and our interests in the Equipment. You agree that the new owner or any of our assignees and transferees will have the same rights and benefits that we now have under this Lease but none of our obligations. The rights of the new owner or any of our assignees and transferees will not be subject to any claim, defense, or set-off that you may have against us.

15. **PAST DUE PAYMENTS.** We may charge you a late charge equal to 10% of any late payment, but not more than the highest legal rate. Any Rental Payments not made when due and other payment obligations incurred as a result of an Event of Default will accrue interest at the lower of 18% per annum or the highest legal rate from their due date until paid.

16. **COMPLIANCE WITH LAWS.** You understand that the Equipment may be purchased for cash in an amount equal to the cost thereof or it may be leased. By signing this Lease, you acknowledge that you have chosen to lease the Equipment from us for the Lease Term and agreed to remit Rental Payments and other sums to us. If this Lease provides for a Dollar Purchase Option, or a Stated Purchase Option that constitutes a nominal percentage of the Equipment Cost, each Rental Payment includes a principal amount based on the Equipment Cost and a lease charge rate. The lease charge portion of the Rental Payment can be determined by applying to the Equipment Cost the rate that will amortize the Equipment Cost down to the Purchase Option amount by remittance of the Rental Payments. The lease charge rate may be higher than the actual annual interest rate because of the amortization of certain costs and expenses incurred by us, WE BOTH INTEND TO COMPLY WITH ALL APPLICABLE LAWS. IF IT IS DETERMINED THAT YOUR PAYMENTS UNDER THIS LEASE RESULT IN AN INTEREST GREATER THAN ALLOWED BY APPLICABLE LAW, THEN ANY EXCESS INTEREST COLLECTED WILL BE APPLIED TO AMOUNTS THAT ARE LAWFULLY DUE AND OWING UNDER THIS LEASE OR WILL BE REFUNDED TO YOU. IN NO EVENT WILL YOU BE REQUIRED TO PAY ANY AMOUNTS IN EXCESS OF THE LEGAL AMOUNT.

17. **YOUR REPRESENTATIONS.** You represent and warrant that (a) you have the lawful power and authority to enter into this Lease, (b) the individuals signing this Lease have been duly authorized to do so on your behalf, (c) by entering into this Lease you will not violate any law or other agreement to which you are a party, (d) you are not aware of anything that will have a material adverse effect on your ability to satisfy your obligations under this Lease, (e) all financial information you have provided and will provide to us is true, correct and complete and provides an accurate representation of your financial condition, and (f) the location of your chief executive office, state of incorporation or organization, exact legal name, place of residence and organizational identification number, as applicable, have been correctly identified to us.

18. **MISCELLANEOUS.** You agree that during the Lease Term (a) you will promptly notify us in writing if there is a change in the name, ownership, state of incorporation or formation or organizational number (if any) of your business, or if there is a change in your ownership, (b) you will provide such financial information as we may reasonably request, (c) you will take any action we reasonably request to protect our rights in the Equipment and this Lease, and (d) we may insert missing information or correct obvious errors or your legal name in this Lease without further notice to you. This Lease constitutes the entire agreement between you and us and supersedes any conflicting equipment purchase order or other written or oral agreement. Except as noted in clause (d) above, no modification of this Lease will be binding unless in writing and signed by you and us. You authorize us (or our agent) to (i) obtain personal credit bureau reports, (ii) make all other credit inquiries we deem necessary, and (iii) furnish payment history information to credit reporting agencies. You agree to pay us a fee shown on the cover page of this Lease to cover our documentation and investigation costs. Any claim you have against us must be made within one year after the event that caused it. TIME IS OF THE ESSENCE IN THIS LEASE. If a court finds any provision of this Lease to be unenforceable, the remaining terms will remain in effect. If you fail to comply with any provision of this Lease, we have the right but not the obligation to have such provision brought into compliance and all expenses we incurred in bring about such compliance will be considered a Rental Payment which is due within five (5) days of the date we send to you a request for payment. All our and your written notices must be sent by certified or first class mail or recognized overnight delivery service, postage prepaid, to your address set forth on the cover page of this Lease or our address at 1010 Thomas Edison Boulevard S.W., Cedar Rapids, Iowa 52404, Telephone No.: (800) 535-1450,or by facsimile transmission to you at your facsimile telephone number set forth on the cover page of this Lease or to us at our facsimile telephone number (319) 841-6324, with oral confirmation of receipt. At any time after this Lease is signed, you or we may change an address or facsimile telephone number by giving notice to the other of the change. You hereby acknowledge and confirm that you have not received any tax, financial, accounting or legal advice from us, the manufacturer or Supplier of the Equipment.

19. **CHOICE OF LAW. THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE STATE OF IOWA. BOTH PARTIES CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN IOWA FOR ALL DISPUTES ARISING UNDER THIS LEASE AND WAIVE ANY RIGHTS TO A JURY TRIAL IN ANY ACTION ARISING UNDER THIS LEASE.**

20. **COUNTERPARTS.** This Lease may be executed in separate counterparts, all of which shall together constitute one and the same instrument. IF THIS LEASE CONSTITUTES CHATTEL PAPER (AS DEFINED IN THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS LEASE MAY BE CREATED THROUGH THE TRANSFER OR POSSESSION OF ANY COUNTERPART OTHER THAN THE ORIGINAL COUNTERPART IDENTIFIED BY US AS THE SOLE ORIGINAL CHATTEL PAPER COPY.

(Lessee: Please initial here _____ to confirm that you have received and read both pages of the Terms and Conditions)

Flow Document Package

**GE Capital**

Please remember to reference Account Schedule #(s) pertaining to your request(s).
Phone: 800-327-9701
Fax:    319-841-6324

Correspondence Only: PO BOX 3083
CEDAR RAPIDS IA 52406-3083

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

**Our Federal Tax ID # 131500700**

981\8 08/2106  10:00   08/19/07  AI  0001009  GEVIASD1  001  002  1-OUNCE

CIRCUIT   SOLUTIONS
C/O  WESTCOM
ATTN:  ACCOUNTS PAYABLE
162  5TH  AVE
NEW YORK NY  10010

| Billing ID Number | 90133713947 |
|---|---|
| Invoice Number | 66088274 |
| Invoice Date | 09/09/2007 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,430.54 |
| Total Amount Due: | 5,532.89 |

DEFNE

000

## INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase Order Number Equipment Description | Line Item Amount | Acct/Sched Total |
|---|---|---|---|---|
| 4416161-003* | | REFERENCE NUMBER     4416161007 | | |
| | | DATA/VOICE HARDWARE | | |
| | | SERIAL NUMBER _____ | | |
| | | MODEL  NUMBER _____ | | |
| | | - LOCATION: | | |
| | | 30 WALL STREET | | |
| | | NEW YORK NY 10005 | | |
| | 10/01/2007 | PAYMENT/INSTALLMENT DUE | 1,261.78 | |
| | | SALES/USE TAX ON PAYMENT | 105.67 | |
| | 08/01/2007 | LATE CHARGES DUE | 63.09 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

---

*To ensure proper credit, detach and return this portion with your payment.* Please include your billing ID Number on your check.

CIRCUIT SOLUTIONS
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

| Billing ID Number | 90133713947 |
|---|---|
| Invoice Number | 66088274 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,430.54 |
| Total Amount Due: | 5,532.89 |

DEFNE

000

GE CAPITAL
P.  O.  BOX 642555
PITTSBURGH  PA  15264-2555

☐ *Please check here if your address or equipment location has changed and complete reverse side.*

590133713947660882740000014305400000553289660882743815

**EXHIBIT E**

 **GE Commercial Finance**
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 005

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS, LLC          Lender Name: GENERAL ELECTRIC CAPITAL
                                                                CORPORATION

| Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | SYSTEM SOFTWARE - CURRENT GA RELEASE | |
| | ☒ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof | |

Equipment Location: 30 WALL STREET , NEW YORK, NY 10003

Equipment Supplier: EASTERN RESEARCH, INC.

ACCEPTANCE NOTICE As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date"):
(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;
(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;
(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS, LLC

By:   X _____

Name: X   Kevin Gorl

Title: X   Member

Acceptance Date: X   10/26/06



GE Commercial Finance
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS, LLC
4416161003

| DESCRIPTION | QTY |
|---|---|
| System Software - Current GA Release | 1 |
| DMX 15 Slot Equipment Host | 1 |
| DC Power Supply ( for 15 slot host) | 3 |
| AC Power Supply (for 15 slot host) | 2 |
| SMC DMX System Shelf | 0 |
| Expansion Node Management (XNM) | 2 |
| SMC-II for XNM main modules | 0 |
| SMC-IIA or XNM rear modules | 4 |
| Expansion Node Group Optimzed App (XNGO) | 2 |
| Expansion Node Cross Connect MR (XCCS) | 1 |
| Expansion Link Controller Module (XLCC) | 8 |
| Single ST3-1 Application Module | 0 |
| Single ST3-1 Interface Module | 0 |
| Hybrid DS-3 Application Module | 0 |
| Hybrid DS3 Interface Module | 0 |
| Octal T1/E1 Application Module | 0 |
| Octal T1/E1 with APS Application Module | 0 |
| Octal T1/E1 Interface Module | 0 |
| Octal HSD Application Module | 0 |
| Octal HSD Interface Module | 0 |
| Quad OC3/DP Application Module | 0 |
| Quad OC3/DP Interface Module | 0 |
| Single Router Application Module | 0 |
| Single Router Interface Module | 0 |
| Router Application Module | 0 |
| Router Interface Module | 0 |
| Octal Voice Application Module | 0 |
| Octal 4 Wire E & M Interface Module | 0 |
| Octal 2 Wire FXO/DP Interface Module | 0 |
| Octal 2 Wire FXS Interface Module | 0 |
| STM1 Application Module | 0 |
| DS3 Application Module | 0 |
| OC3/STM1 Optical Networking Software | 0 |
| STM1/OC3 short range Interface Module | 0 |
| STM1/OC3 Long range Interface Module | 0 |
| Octal DS0-DP Application Module | 0 |
| Octal DS0-DP Interface Module | 0 |
| E3 Application Module | 0 |
| E3 Interface Module | 0 |

Lessee Initials: X _____ Date: 5-17-06

MAY 12 2006 12:39


GE Commercial Finance
Vendor Financial Services

| | |
|---|---|
| (A) Protection System (s) (DC311 only) | 1 |
| (B) Switch Converter Unit | 1 |
| (L-a) Switch DC Power Supply | 2 |
| (M) Narrowband Physical Card | 0 |
| (N-1) Narrowband Pass Word Card | 0 |
| (Q) Broadband IF Switch Card | 0 |
| (F) Broadband IF Pass Word Card | 1 |

| | |
|---|---|
| (N-1) Switch Blank Bezel | 1 |
| Blank bezel for logic system manager slot | 0 |
| Blank bezel for line application slots | 0 |
| Blank bezel for host interface slots | 0 |
| Blank bezel for power supply slots (DC311) | 0 |
| DC5 Patch Panel (4 port) | 1 |
| 50 pin to 50 pin host cables (3 ft) | 1 |
| 50 pin host to host cable (6 ft) | 1 |
| Terminators attached to host cable (2 pcs) | 1 |
| Broadband MW Coaxial Cables (3 ft) | 1 |
| Expansion Cables (DC5 to DC5) (3 ft) | 1 |
| Expansion Cables (DC5 to DC5) (6 ft) | 1 |
| DC311 Flush 23" Rack Mount Adapter Kit | 1 |
| DC311 Center Line Rack Mount Adapter Kit | 1 |
| PS11 Flush 23" Rack Mount Adapter Kit | 1 |
| Rack Center 23" Rack Mount Adapter Kit | 1 |

Lessee Initials: X_____ Date: 5-12-06

MAY 12 2006 12:39

**EXHIBIT F**



GE
Capital Solutions

Equipment Finance Services

10 Riverview Drive
Danbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY 10005

Re:    Notice of Assignment - Equipment Schedule No. 4416161-003 (the "Designated Schedule")
incorporating by reference the terms and conditions of that certain Master Lease Agreement dated as
of August 2, 2006, both between General Electric Capital Corporation ("GE") and KGM Circuit
Solutions LLC ("Customer").

Ladies and Gentlemen:

GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents.  From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____
Name:  JoEllen Bentson
Title:  Capital Markets Operations - Syndications

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____
Name: _____
Title: _____

**EXHIBIT G**



GE Commercial Finance
Vendor Financial Services

Agreement # 4416161

## Master Note and Security Agreement

"Master Agreement" means this Master Note and Security Agreement. "Schedule" means any Payment Schedule signed by you and us that incorporates the terms of this Master Agreement. "Note" means this Master Agreement and any Schedule. "Lender" means General Electric Capital Corporation and is also referred to as "we", "us" and "our". "Borrower" means the entity or individual identified below and is also referred to as "you" and "your". "Equipment" means the equipment described on each Schedule. "Collateral" has the meaning given to such term in Section 5 below.

### TERMS AND CONDITIONS

**1. COMMENCEMENT OF SCHEDULE.** Commencement of a Schedule (the "Commencement Date") will occur upon our funding of the Original Principal Balance of the Schedule to you or your designee; provided that we do not have to fund the Original Principal Balance of a Schedule to you or your designee unless on or before the Last Funding Date indicated on such Schedule (which is the date the credit approval for such Schedule expires): (a) we have received all required documentation (including confirmation of acceptance) in satisfactory form and substance and any required Advance Payments, (b) no material adverse change in your business, operations or financial condition occurs, and (c) no Default as described in Section 11 occurs and is then continuing. **YOUR OBLIGATIONS TO REMIT PAYMENTS TO US UNDER EACH NOTE SHALL BE ABSOLUTE, UNCONDITIONAL AND NONCANCELLABLE, AND SHALL BE COMPLETELY INDEPENDENT OF ANY DEFECT OR DAMAGE TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR LOSS OF POSSESSION OR USE OF THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR ANY FAILURE ON THE PART OF ANY PARTY TO PERFORM ANY MAINTENANCE OR SERVICES RELATED TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR MAKE ANY PAYMENTS RELATED THERETO, AND SHALL NOT BE SUBJECT TO ANY SET-OFFS, ABATEMENTS, SUSPENSIONS, DEFERMENTS, REDUCTIONS, CLAIMS, COUNTERCLAIMS OR DEFENSES OF ANY NATURE WHATSOEVER.**

**2. DISCLAIMER. YOU ACKNOWLEDGE AND AGREE THAT: (a) WE ARE NOT THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT (OR OF ANY OTHER COLLATERAL) OR ANY PART THEREOF OR THE REPRESENTATIVE OF EITHER THE SUPPLIER OR MANUFACTURER; (b) YOU HAVE SELECTED THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL AS SUITABLE FOR YOUR PURPOSES BASED SOLELY UPON YOUR OWN JUDGMENT WITHOUT ANY ASSISTANCE FROM US OR OUR AGENTS OR EMPLOYEES; (c) YOU EXPRESSLY DISCLAIM RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS OR EMPLOYEES; (d) THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL IS OF A DESIGN, SIZE, FITNESS AND CAPACITY SELECTED BY YOU AND THAT YOU ARE FULLY SATISFIED THAT THE SAME IS SUITABLE AND FIT FOR ITS PURPOSES; AND (e) WE DO NOT MAKE, HAVE NOT MADE, NOR SHALL WE BE DEEMED TO MAKE OR HAVE MADE, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO ANY PART OF THE EQUIPMENT (OR AS APPLICABLE) ANY OTHER COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FITNESS FOR ANY PARTICULAR PURPOSE, USE OR MERCHANTABILITY, OR ANY WARRANTY AS TO THE DESIGN, COMPLIANCE WITH SPECIFICATIONS, COMPLIANCE WITH APPLICABLE LAW, USE OR OPERATION OR CONDITION OR CAPACITY, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP, OR AS TO SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT. ALL SUCH RISKS, AS BETWEEN YOU, AND US ARE TO BE BORNE BY YOU. WE SHALL HAVE NO LIABILITY TO YOU OR TO ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE USE OF THE EQUIPMENT, ANY OTHER COLLATERAL, OR OTHERWISE.**

**3. NOTE PAYMENTS; ADJUSTMENTS.** You agree to remit to us the Note Payments (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. Your Note Payment is calculated, in part, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of the Note as published in the Federal Reserve Statistical Release H.15 (available at http://www.federalreserve.gov/releases/h15/update/) on the date we either prepare the

corresponding Schedule or (if applicable) send you a written financing proposal/quote relating to the Equipment (the "Initial Rate Date"). The interest rate and your Note Payment may be adjusted if the Swap Rate as reported four business days prior to acceptance of the Equipment is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the interest rate changes. If the invoiced amount for the Equipment relating to a Schedule is more than the Original Principal Balance shown on that Schedule due to changes in Equipment configuration or other cost factors affecting such invoiced amount, and if such an increase is within the dollar limits and time limits of our credit approval, you authorize us to increase the Original Principal Balance by not more than 15% and adjust your Note Payment (using the Interest Rate then applying to the Schedule). We will notify you of any such adjustment.

**4. OTHER CHARGES.** You agree to: (a) pay all costs and expenses associated with the ownership, use, maintenance, servicing, repair or replacement of the Equipment and (as applicable) any other Collateral and (b) pay all premiums and other costs of insuring the Equipment and (as applicable) any other Collateral. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Note and (2) pay all other costs and expenses for which you are obligated under the Note, including any Document Fee specified in the Schedule (the "Other Charges"). You agree to file all required property and other tax returns and pay all property and other taxes promptly, which may be assessed against the Equipment or against any of the other Collateral. We may take on your behalf any action required under the Note, which you fail to take, and upon receipt of our invoice you will promptly pay our costs, plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. SECURITY INTEREST.** As security for the payment of any of your obligations and liabilities of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to us pursuant to this Master Agreement and any extensions and modifications hereof (any and all of which are sometimes referred to hereafter as the "Indebtedness"), you hereby give, grant and assign to us, our successors and assigns, a continuing first perfected security interest in the Equipment, all repairs, accessories, additions, parts, supplies, attachments, devices, replacements and substitutions for or accessions to such property, all software used in connection with such property, all insurance or other proceeds of such property, all accounts, contract rights, documents, instruments, accounts receivable, general intangibles, chattel paper and books and records directly or indirectly related to the foregoing and all your security deposits, revenues or other funds or property in possession of or in transit to us (all herein referred to collectively as the "Collateral"). You hereby authorize us to prepare and file, electronically or otherwise, a financing statement and any amendment thereto or continuation of assignment thereof relating to our interest in the Collateral, and containing any other information required by the applicable Uniform Commercial Code. A photostatic copy or other reproduction of this Master Agreement or of a financing statement shall be sufficient as a financing statement.

**6. LATE CHARGES.** For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

[Continued on next page]

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE WILL BE GOVERNED BY THE LAWS OF IOWA. BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS YOU AND WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS YOU AND WE MAY LATER AGREE IN WRITING TO MODIFY IT.

| GENERAL ELECTRIC CAPITAL CORPORATION | KGM CIRCUIT SOLUTIONS LLC |
|---|---|
| 1010 Thomas Edison Blvd, Cedar Rapids, IA 52404 | Full Legal Name |
| By: _Diana Graham_ | By: _Maggie Foley_ |
| Name: _Diana L. Graham_ | Name: _MAGGIE FOLEY_ |
| Title: _CA_ | Title: _CMO_ |
| Date: _10/30/06_ | Date: _4/25/06_ |

GE Commercial Finance
Vendor Financial Services

7.  MAINTENANCE AND REPAIR. You must keep the Equipment and any other Collateral free of liens (other than our lien). You may not remove the Equipment or (as applicable) any other Collateral from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment and any other Collateral in your exclusive control and possession; (b) USE THE EQUIPMENT AND ANY OTHER COLLATERAL ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment and any other Collateral in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment and (as applicable) any other Collateral repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and (as applicable) any other Collateral and the related maintenance and other records.
8.  INDEMNITY. YOU ARE RESPONSIBLE FOR ALL LOSSES, DAMAGES, CLAIMS, INFRINGEMENT CLAIMS, INJURIES AND ATTORNEYS' FEES AND COSTS (collectively "CLAIMS"), INCURRED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE EQUIPMENT OR ANY OTHER COLLATERAL, INCLUDING THE USE, CONDITION OR POSSESSION OF SUCH EQUIPMENT OR SUCH OTHER COLLATERAL. YOU AGREE TO DEFEND AND INDEMNIFY US AGAINST ALL CLAIMS, ALTHOUGH WE RESERVE THE RIGHT TO CONTROL THE DEFENSE AND TO SELECT OR APPROVE DEFENSE COUNSEL.   THIS INDEMNITY CONTINUES BEYOND THE TERMINATION OF THIS AGREEMENT AND/OR THE TERMINATION OF ANY SCHEDULE.
9.  LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us (along with repairing or replacing any other Collateral lost, stolen or damaged); or (b) pay us the sum of: (i) all past due and current Note Payments, (ii) the then remaining principal balance of the applicable Note (after application of item (b)(i)), and (iii) all Other Charges. In the event you exercise option (a) above and replace the Equipment, you will (A) notify us of such replacement within 30 days of the date the Equipment is lost, stolen or damaged and (B) replace the Equipment with an item of like or better kind of equipment by the same manufacturer. In the event you exercise option (b) above, we will then release our security interest in the Collateral. Insurance proceeds will be applied toward repair, replacement or payment hereunder, as applicable.
10.  INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming you and us as loss payees as our interests may appear; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we may require, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Upon our request, prior to the Commencement Date of a Schedule and at any time thereafter, you must provide us with evidence of such insurance coverages.
11.  DEFAULT. You will be in default ("Default") under the Note if: (a) you fail to remit to us any payment within 10 days of the due date or breach any other obligation under the Note; (b) a petition is filed by or against you under any bankruptcy or insolvency law; or (c) you default under any other agreement with us or any of our affiliates.
12.  REMEDIES. Upon the occurrence of a Default, we, at our option, may declare all of the obligations and liabilities secured by this Master Agreement and all Notes to be immediately due and payable, without demand or notice to you. The obligations and liabilities accelerated thereby shall bear interest at the lower of 18% per annum or the maximum rate allowed by applicable law. Upon the occurrence of a Default, we may, in our sole discretion, elect to foreclose or realize upon the Collateral. Should we elect to foreclose or realize upon the Collateral, you expressly agree that your rights under and interests in the Collateral shall be (to the maximum extent permitted under applicable law) automatically, and without any further action required of any party, assigned and conveyed to us, but that we shall have no obligations or liabilities related to the Collateral, all of which shall remain with you. You agree to execute and deliver to us (or our designee) such agreements, documents and instruments as may be necessary, in our sole discretion, to effect such assignment and conveyance. Upon such assignment and conveyance, you expressly acknowledge that we may exercise any of the rights related to the Collateral to the exclusion of you. In addition, we may exercise all rights and remedies available to us under the law and Uniform Commercial Code as now

enacted or as may be from time to time amended and, in conjunction with, addition to or substitution for those rights and remedies, at our discretion, we may, in conformity with applicable law (i) enter upon your premises and take possession of, assemble and collect the Collateral or to render it unusable, (ii) require you to assemble the Collateral and make it available at a place we designate which is mutually convenient, to allow us to take possession or dispose of the Collateral, (iii) sell the Collateral at public or private sale, whether or not the Collateral is in our constructive possession, in one or more sales, as an entirety or in parcels, and be, at our election, the purchaser at any such sale; and/or (iv) lease or otherwise dispose of all or part of the Collateral applying the resulting proceeds to all expense in connection with the taking and sale or lease of Collateral, and any balance of such proceeds toward the payment of your obligations in such order of application as we may from time to time elect, provided that any proceeds we receive in excess of your obligations will be remitted to you or (as the case may be) the party otherwise lawfully entitled thereto.
Without limitation to the foregoing, it is agreed that upon 5 days' notice to you and within 6 months of repossession (i) any private sale of the Collateral in "as is" condition at wholesale including, without limitation, sales based on bids received from dealers, manufacturers or otherwise, or (ii) any lease of the Collateral, in both events without the need for advertising, shall be a commercially reasonable disposition of the Collateral. In no event will blue book, black book, NADA or other published price lists be determinative of the commercial reasonableness of any disposition of the Collateral. Notwithstanding any repossession or any other action which we may take with respect to the Collateral, you shall be and remain liable for any deficiency and for the full performance of all obligations on your part to be performed. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately.
13.  ASSIGNMENT. YOU MAY NOT ASSIGN OR DISPOSE OF ANY RIGHTS OR OBLIGATIONS UNDER THE NOTE OR WITH RESPECT TO THE EQUIPMENT OR WITH RESPECT TO ANY OTHER COLLATERAL OR LEASE THE EQUIPMENT, WITHOUT OUR PRIOR WRITTEN CONSENT. We may, without notifying you, (a) assign all or any portion of our interest in the Note or all or any portion of our interest in the Equipment or any other Collateral; and (b) release information we have about you and the Note to the manufacturer, supplier or any prospective investor, participant or purchaser of the Note. If we do make an assignment under subsection 13(a) above, your assignee will have all of our rights under the Note (to the extent of such assignment), but none of our obligations (unless we and such assignee agree otherwise in writing). You agree not to assert against our assignee claims, offsets or defenses you may have against us.
14.  MISCELLANEOUS. Notices must be in writing and will be deemed given 5 days after mailing to your or (as the case may be) our business address. You represent that: (a) you have authority to enter into the Note and by so doing you will not violate any law or agreement; and (b) the Note is signed by your authorized officer, representative or agent. The Note is the entire agreement between you and us, and cannot be modified except by another document signed by you and us. The Note is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our representatives to: (a) obtain credit reports and make credit inquiries; and (b) furnish your payment history to credit reporting agencies. Any claim you have against us must be made within 2 years after the event, which caused it. If a court finds any provision of the Note to be unenforceable, all other terms will remain in effect and enforceable. You authorize us to insert or correct missing information on the Note, including the Commencement Date, your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege.
15.  LIMITATIONS ON CHARGES. This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Note. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstances to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Note to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Note, or refunded to you.

Borrower's    Initials



**GE Capital**

*Please remember to reference Account Schedule #(s) pertaining to your request(s).*
Phone: 800-327-9701
Fax:    319-841-6324

Correspondence Only: PO BOX 3083
CEDAR RAPIDS IA 52406-3083

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

Our Federal Tax ID # 131500700

981B 08/21/06   12:00     09/10/07   AI  0081668  GEVAS61  001  002  1-OUNCE

KGM CIRCUIT  SOLUTIONS LLC
C/O  WESTCOM
ATTN:  ACCOUNTS PAYABLE
162  5TH  AVE
NEW YORK NY  10010

| Billing ID Number | 90133740113 |
|---|---|
| Invoice Number | 65901415 |
| Invoice Date | 08/08/2007 |
| Due Date: | 09/01/2007 |
| Current Items Due: | 679.77 |
| Total Amount Due: | 2,621.97 |

CEFNE

000

## INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase  Order  Number  Equipment  Description | Line  Item  Amount | Acct/Sched  Total |
|---|---|---|---|---|
| 4416161-002* | | REFERENCE NUMBER     4416161006  — MODERN CABLE  – LOCATION:  111 8TH AVE  NEW YORK NY 10015 | | |
| | 09/01/2007 | PAYMENT/INSTALLMENT DUE | 647.40 | |
| | 07/01/2007 | LATE CHARGES DUE | 32.37 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

*To ensure proper credit, detach and*
*return this portion with your payment.*
*Please include your billing ID Number*
*on your check.*

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

☐ *Please check here if your address or equipment*
*location has changed and complete reverse side.*

| Billing ID Number | 90133740113 |
|---|---|
| Invoice Number | 65901415 |
| Due Date: | 09/01/2007 |
| Current Items Due: | 679.77 |
| Total Amount Due: | 2,621.97 |

CEFNE

000

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

59013374011365901415000000679770000026219765901415381 4

**EXHIBIT H**

  **GE Commercial Finance**
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 002

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS LLC             Lender Name: GENERAL ELECTRIC CAPITAL
CORPORATION

| EQUIPMENT Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | DATA/VOICE HARDWARE - ☒ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof. | |

Equipment Location: 30 WALL STREET, NEW YORK NY 10005  *111 8th Ave N.Y. N.Y.*

Equipment Supplier: EASTERN RESEARCH, INC.

ACCEPTANCE NOTICE As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date");

(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;

(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;

(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS LLC

By:    X *Maggie Foley*

Name: X *MAGGIE FOLEY*

Title: X *CAO*

Acceptance Date: X *4/24/06  10/27/06*

*Anthony Lanch   OWSDI-1140*



**GE Commercial Finance**
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS LLC
4416161002

| Item Type | Qty |
|---|---|
| SPS-1000 Chassis (DC) | |
| SPS-1000 Chassis (AC) | 1 |
| SPS-1000 Power Supply (DC) | |
| SPS-1000 Power Supply (AC) | 2 |
| SPS-1000 Fan Tray (Front) | 1 |
| SPS Octal T1/E1-DSP-1 Module (Front) | 1 |
| SPS Octal T1/E1 Module (Rear) | 1 |
| SPS Conferencing Shew (1 copy per Module Set) | 1 |
| **Cables & Accessories** | |
| 50-Pin TELCO to 8 Individual RJ48C (crossover) | 1 |
| SPS-1000 Blank Power Supply Bezel | |
| SPS Blank Bezel (1-Slot) | 6 |
| SPS-1000 ICMM Null Modem Cable | 1 |
| SPS Octal T1/E1 Debug Port Cable | 1 |

Lessee Initials: X _____ Date: 10/26/06

**EXHIBIT I**



Equipment Finance Services

10 Riverview Drive
Danbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY 10005

Re:    Notice of Assignment - Equipment Schedule No. 4416161-002 (the "Designated Schedule")
       incorporating by reference the terms and conditions of that certain Master Note and Security
       Agreement dated as of October 30, 2006, both between General Electric Capital Corporation ("GE")
       and KGM Circuit Solutions LLC ("Customer").

Ladies and Gentlemen:

       GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents. From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____
Name: JoEllen Bentson
Title: Capital Markets Operations - Syndications

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____
Name: THOMAS C. OTTO
Title: VICE PRESIDENT

**EXHIBIT B**

GEC Commercial Finance
Vendor Financial Services

## Master Note and Security Agreement

Agreement # 6616861

"Master Agreement" means this Master Note and Security Agreement. "Schedule" means any Payment Schedule signed by you and us that incorporates the terms of this Master Agreement. "Note" means this Master Agreement and any Schedule. "Lender" means General Electric Capital Corporation and is also referred to as "we", "us" and "our". "Borrower" means the entity or individual identified below and is also referred to as "you" and "your". "Equipment" means the equipment described on each Schedule. "Collateral" has the meaning given in such term in Section 5 below.

**1. COMMENCEMENT OF SCHEDULE.** Commencement of a Schedule (the "Commencement Date") will occur upon our funding of the Original Principal Balance of the Schedule to you or your designee; provided that we do not have to fund the Original Principal Balance of a Schedule to you or your designee unless on or before the Last Funding Date indicated on such Schedule (which is the date the credit approval for such Schedule expires): (a) we have received all required documentation (including confirmation of acceptance) in satisfactory form and substance and any required Advance Payment, (b) no material adverse change in your business, operations or financial condition occurs, and (c) no Default as described in Section 11 occurs and is then continuing. YOUR OBLIGATIONS TO REMIT PAYMENTS TO US UNDER EACH NOTE SHALL BE ABSOLUTE, UNCONDITIONAL AND NONCANCELLABLE, AND SHALL BE COMPLETELY INDEPENDENT OF ANY DEFECT OR DAMAGE TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR LOSS OF POSSESSION OR USE OF THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR ANY FAILURE ON THE PART OF ANY PARTY TO PERFORM ANY MAINTENANCE OR SERVICES RELATED TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR MAKE ANY PAYMENTS RELATED THERETO, AND SHALL NOT BE SUBJECT TO ANY SET-OFFS, ABATEMENTS, SUSPENSIONS, DEFERMENTS, REDUCTIONS, CLAIMS, COUNTERCLAIMS OR DEFENSES OF ANY NATURE WHATSOEVER.

**2. DISCLAIMER.** YOU ACKNOWLEDGE AND AGREE THAT: (a) WE ARE NOT THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT (OR OF ANY OTHER COLLATERAL) OR ANY PART THEREOF OR THE REPRESENTATIVE OF EITHER THE SUPPLIER OR MANUFACTURER; (b) YOU HAVE SELECTED THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL AS SUITABLE FOR YOUR PURPOSES BASED SOLELY UPON YOUR OWN JUDGMENT WITHOUT ANY ASSISTANCE FROM US OR OUR AGENTS OR EMPLOYEES; (c) YOU EXPRESSLY DISCLAIM RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS OR EMPLOYEES; (d) THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL IS OF A DESIGN, SIZE, FITNESS AND CAPACITY SELECTED BY YOU AND THAT YOU ARE FULLY SATISFIED THAT THE SAME IS SUITABLE AND FIT FOR ITS PURPOSES; AND (e) WE DO NOT MAKE, HAVE NOT MADE, NOR SHALL WE BE DEEMED TO MAKE OR HAVE MADE, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO ANY PART OF THE EQUIPMENT (OR AS APPLICABLE) ANY OTHER COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FITNESS FOR ANY PARTICULAR PURPOSE, USE OR MERCHANTABILITY, OR ANY WARRANTY AS TO THE DESIGN, COMPLIANCE WITH SPECIFICATIONS, COMPLIANCE WITH APPLICABLE LAW, USE OR OPERATION OR CONDITION OR CAPACITY, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP, OR AS TO SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, ALL SUCH RISKS, AS BETWEEN YOU AND US ARE TO BE BORNE BY YOU, WE SHALL HAVE NO LIABILITY TO YOU OR TO ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE USE OF THE EQUIPMENT, ANY OTHER COLLATERAL, OR OTHERWISE.

**3. NOTE PAYMENTS; ADJUSTMENTS.** You agree to remit to us the Note Payments (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. Your Note Payment is calculated, in part, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of the Note as published in the Federal Reserve Statistical Release H.15 (available at http://www.federalreserve.gov/releases/h15/update/) on the date we either prepare the

corresponding Schedule or (if applicable) send you a written financing proposal/quote relating to the Equipment (the "Initial Rate Date"). The interest rate and your Note Payment may be adjusted if the Swap Rate as reported 4 business days prior to acceptance of the Equipment is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the interest rate changes. If the invoiced amount for the Equipment relating to a Schedule is more than the Original Principal Balance shown on that Schedule due to changes in Equipment configuration or other cost factors affecting such invoiced amount, and if such an increase is within the dollar limits and time limits of our credit approval, you authorize us to increase the Original Principal Balance by not more than 15% and adjust your Note Payment (using the Interest Rate then applying to the Schedule). We will notify you of any such adjustment.

**4. OTHER CHARGES.** You agree to: (a) pay all costs and expenses associated with the ownership, use, maintenance, servicing, repair or replacement of the Equipment and (as applicable) any other Collateral and (b) pay all premiums and other costs of insuring the Equipment and (as applicable) any other Collateral. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Note and (2) pay all other costs and expenses for which you are obligated under the Note, including any Document Fee specified in the Schedule (the "Other Charges"). You agree to file all required property and other tax returns and pay all property and other taxes promptly, which may be assessed against the Equipment or against any of the other Collateral. We may take on your behalf any action required under the Note, which you fail to take, and upon receipt of our invoice you will promptly pay our costs, plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

**5. SECURITY INTEREST.** As security for the payment of any of your obligations and liabilities of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to us pursuant to this Master Agreement and any extensions and modifications hereof (any and all of which are sometimes referred to hereafter as the "Indebtedness"), you hereby give, grant and assign to us, our successors and assigns, a continuing first perfected security interest in the Equipment, all repairs, accessories, additions, parts, supplies, attachments, devices, replacements and substitutions (or accessions to such property, all software used in connection with such property, all insurance or other proceeds of such property, all accounts, contract rights, documents, instruments, accounts receivable, general intangibles, chattel paper and books and records directly or indirectly related to the foregoing and all your security deposits, moneys or other funds or property in possession of or in transit to us (all herein referred to collectively as the "Collateral"). You hereby authorize us to prepare and file, electronically or otherwise, a financing statement and any amendment thereto or continuation or assignment thereof relating to our interest in the Collateral, and containing any other information required by the applicable Uniform Commercial Code. A photostatic copy or other reproduction of this Master Agreement or of a financing statement shall be sufficient as a financing statement.

**6. LATE CHARGES.** For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

[Continued on next page]

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE WILL BE GOVERNED BY THE LAWS OF IOWA. BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS YOU AND WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS YOU AND WE MAY LATER AGREE IN WRITING TO MODIFY IT.

| GENERAL ELECTRIC CAPITAL CORPORATION | KGM CIRCUIT SOLUTIONS, LLC |
|---|---|
| 1010 Thomas Edison Blvd, Cedar Rapids, IA 52404 | Full Legal Name |
|  | CIRCUIT SOLUTIONS |
|  | D/B/A |
| By: _____ | By: _Kevin Curl_ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _Member_ |
| Date: _07/31/06_ | Date: _10/30/06_ |

GE Commercial Finance
Vendor Financial Services

**7. MAINTENANCE AND REPAIR.** You must keep the Equipment and any other Collateral free of liens (other than our lien). You may not remove the Equipment or (as applicable) any other Collateral from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment and any other Collateral in your exclusive control and possession; (b) USE THE EQUIPMENT AND ANY OTHER COLLATERAL ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment and any other Collateral in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment and (as applicable) any other Collateral repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and (as applicable) any other Collateral and the related maintenance and other records.

**8. INDEMNITY.** YOU ARE RESPONSIBLE FOR ALL LOSSES, DAMAGES, CLAIMS, INFRINGEMENT CLAIMS, INJURIES AND ATTORNEYS' FEES AND COSTS (collectively "CLAIMS"), INCURRED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE EQUIPMENT OR ANY OTHER COLLATERAL, INCLUDING THE USE, CONDITION OR POSSESSION OF SUCH EQUIPMENT OR SUCH OTHER COLLATERAL. YOU AGREE TO DEFEND AND INDEMNIFY US AGAINST ALL CLAIMS, ALTHOUGH WE RESERVE THE RIGHT TO CONTROL THE DEFENSE AND TO SELECT OR APPROVE DEFENSE COUNSEL. THIS INDEMNITY CONTINUES BEYOND THE TERMINATION OF THIS AGREEMENT AND/OR THE TERMINATION OF ANY SCHEDULE.

**9. LOSS OR DAMAGE.** If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us (along with repairing or replacing any other Collateral lost, stolen or damaged); or (b) pay us the sum of: (i) all past due and current Note Payments, (ii) the then remaining principal balance of the applicable Note (after application of item (b)(i)), and (iii) all Other Charges. In the event you exercise option (a) above and replace the Equipment, you will (A) notify us of such replacement within 30 days of the date the Equipment is lost, stolen or damaged and (B) replace the Equipment with an item of like or better kind of equipment by the same manufacturer. In the event you exercise option (b) above, we will then release our security interest in the Collateral. Insurance proceeds will be applied toward repair, replacement or payment hereunder, as applicable.

**10. INSURANCE.** You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming you and us as loss payees as our interests may appear; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we may require, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Upon our request, prior to the Commencement Date of a Schedule and at any time thereafter, you must provide us with evidence of such insurance coverages.

**11. DEFAULT.** You will be in default ("Default") under the Note if: (a) you fail to remit to us any payment within 10 days of the due date or breach any other obligation under the Note; (b) a petition is filed by or against you under any bankruptcy or insolvency law; or (c) you default under any other agreement with us or any of our affiliates.

**12. REMEDIES.** Upon the occurrence of a Default, we, at our option, may declare all of the obligations and liabilities secured by this Master Agreement and all Notes to be immediately due and payable, without demand or notice to you. The obligations and liabilities accelerated thereby shall bear interest at the lower of 18% per annum or the maximum rate allowed by applicable law. Upon the occurrence of a Default, we may, in our sole discretion, elect to foreclose or realize upon the Collateral. Should we elect to foreclose or realize upon the Collateral, you expressly agree that your rights under and interests in the Collateral shall be (to the maximum extent permitted under applicable law) automatically, and without any further action required of any party, assigned and conveyed to us, but that we shall have no obligations or liabilities related to the Collateral, all of which shall remain with you. You agree to execute and deliver to us (or our designee) such agreements, documents and instruments as may be necessary, in our sole discretion, to effect such assignment and conveyance. Upon such assignment and conveyance, you expressly acknowledge that we may exercise any of the rights related to the Collateral to the exclusion of you. In addition, we may exercise all rights and remedies available to us under the law and Uniform Commercial Code as now

enacted or as may be from time to time amended and, in conjunction with, addition to or substitution for those rights and remedies, at our discretion, we may, in conformity with applicable law (i) enter upon your premises and take possession of, assemble and collect the Collateral or to render it unusable, (ii) require you to assemble the Collateral and make it available at a place we designate which is mutually convenient, to allow us to take possession or dispose of the Collateral, (iii) sell the Collateral at public or private sale, whether or not the Collateral is in our constructive possession, in one or more sales, as an entirety or in parcels, and be, at our election, the purchaser at any such sale; and/or (iv) lease or otherwise dispose of all or part of the Collateral applying the resulting proceeds to all expenses in connection with the taking and sale or lease of Collateral, and any balance of such proceeds toward the payment of your obligations in such order of application as we may from time to time elect, provided that any proceeds we receive in excess of your obligations will be remitted to you or (as the case may be) the party otherwise lawfully entitled thereto.

Without limitation to the foregoing, it is agreed that upon 5 days' notice to you and within 6 months of repossession (i) any private sale of the Collateral in "as is" condition at wholesale including, without limitation, sales based on bids received from dealers, manufacturers or otherwise, or (ii) any lease of the Collateral, in both events without the need for advertising, shall be a commercially reasonable disposition of the Collateral. In no event will blue book, black book, NADA or other published price lists be determinative of the commercial reasonableness of any disposition of the Collateral. Notwithstanding any repossession or any other action which we may take with respect to the Collateral, you shall be and remain liable for any deficiency and for the full performance of all obligations on your part to be performed. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately.

**13. ASSIGNMENT.** YOU MAY NOT ASSIGN OR DISPOSE OF ANY RIGHTS OR OBLIGATIONS UNDER THE NOTE OR WITH RESPECT TO THE EQUIPMENT OR WITH RESPECT TO ANY OTHER COLLATERAL OR LEASE THE EQUIPMENT, WITHOUT OUR PRIOR WRITTEN CONSENT. We may, without notifying you, (a) assign all or any portion of our interest in the Note or all or any portion of our interest in the Equipment or any other Collateral; and (b) release information we have about you and the Note to the manufacturer, supplier or any prospective investor, participant or purchaser of the Note. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under the Note (to the extent of such assignment), but none of our obligations (unless we and such assignee agree otherwise in writing). You agree not to assert against our assignee claims, offsets or defenses you may have against us.

**14. MISCELLANEOUS.** Notices must be in writing and will be deemed given 5 days after mailing to your or (as the case may be) our business address. You represent that: (a) you have authority to enter into the Note and by so doing you will not violate any law or agreement; and (b) the Note is signed by your authorized officer, representative or agent. The Note is the entire agreement between you and us, and cannot be modified except by another document signed by you and us. The Note is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our representatives to: (a) obtain credit reports and make credit inquiries; and (b) furnish your payment history to credit reporting agencies. Any claim you have against us must be made within 2 years after the event, which caused it. If a court finds any provision of the Note to be unenforceable, all other terms will remain in effect and enforceable. You authorize us to insert or correct missing information on the Note, including the Commencement Date, your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege.

**15. LIMITATIONS ON CHARGES.** This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Note. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstances to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Note to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Note, or refunded to you.

Borrower's initials

**GE Capital**

GE CAPITAL
P.O. BOX 642555
PITTSBURGH PA 15264-2555

Our Federal Tax ID # 131500700

10/02/07  AI  0000001  GEVIAS01  001  003  1-OUNCE        980148 12/07/00 12:00

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

Correspondence Only: PO BOX 3083
CEDAR RAPIDS IA 52406-3083

| Billing ID Number | 90133740842 |
|---|---|
| Invoice Number | 66089380 |
| Invoice Date | 09/09/2007 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,308.14 |
| Total Amount Due: | 3,862.13 |

CEFNE
000

## INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase Order Number Equipment Description | Line Item Amount | Acct/Sched Total |
|---|---|---|---|---|
| 4416161-005* | | REFERENCE NUMBER    4416161008 SYSTEM SOFTWARE-CURRENT GA - LOCATION: 30 WALL ST NEW YORK NY 10003 | | |
| | 10/01/2007 | PAYMENT/INSTALLMENT DUE | 1,245.85 | |
| | 08/01/2007 | LATE CHARGES DUE | 62.29 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

*To ensure proper credit, detach and return this portion with your payment. Please include your billing ID Number on your check.*

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

*Please check here if your address or equipment location has changed and complete reverse side.*

| Billing ID Number | 90133740842 |
|---|---|
| Invoice Number | 66089380 |
| Due Date: | 10/01/2007 |
| Current Items Due: | 1,308.14 |
| Total Amount Due: | 3,862.13 |

CEFNE
000

*Make Checks Payable and Remit to:*

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

5901337408426608938000000130814000003862136608938038l8

**EXHIBIT C**

 **GE Commercial Finance**
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 005

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS, LLC

Lender Name: GENERAL ELECTRIC CAPITAL CORPORATION

| Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | SYSTEM SOFTWARE - CURRENT GA RELEASE | |
| | ☑ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof | |

Equipment Location: 30 WALL STREET , NEW YORK, NY 10005

Equipment Supplier: EASTERN RESEARCH, INC.

**ACCEPTANCE NOTICE** As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date");
(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;
(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;
(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS, LLC

By:    X _____

Name: X    *Kevin Gur l*

Title:  X    *Member*

Acceptance Date: X    *10/06/06*



**GE Commercial Finance**
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KCM CIRCUIT SOLUTIONS, LLC
4416161005

| DESCRIPTION | QTY |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 4 Slot Equipment Nest - 24VDC | |
| DNX 4 Slot Equipment Nest - AC | |
| DNX 4 Slot Equipment Nest - 48 V DC | |
| DNX 11 Slot Equipment Nest | |
| DC Power Supply ( for 11 slot nest) | |
| AC Power Supply (for 11 slot nest) | |
| SMC II w/Stratum 3 clk | |
| Expansion Node Manager (XNM) | |
| SMC IIA or XNM rear module | |
| Expansion Node Cross Connect App (XCC) | |
| Expansion Node Cross Connect I/E (XCC) | |
| Expansion Link Controller Module (XLC) | |
| Single STS-1 Application Module | |
| Single STS-1 Interface Module | |
| Hybrid DS-3 Application Module | 4 |
| Hybrid DS-3 Interface Module | 4 |
| Octal T1/E1 Application Module | |
| Octal T1/E1 with APS Application Module | |
| Octal T1/E1 Interface Module | |
| Octal HSD Application Module | |
| Octal HSD Interface Module | |
| Quad OCUDP Application Module | |
| Quad OCUDP Interface Module | |
| Router/8 Application Module | |
| Router/8 Interface Module | |
| Octal Voice Application Module | |
| Octal 4 Wire E & M Interface Module | |
| Octal 2 Wire FXO/DPT Interface Module | |
| Octal 2 Wire FXS Interface Module | |
| STM1 Application Module | |
| STM1X (X-Link) Application Module | |
| OC3 Application Module | |
| OC3X (X-Link) Application Module | |
| STM1/OC3 Inter. range Interface Module | |
| STM1/OC3 Long range Interface Module | |
| Octal DS0-DP Application Module | |
| Octal DS0-DP Interface Module | |
| E3 Application Module | |
| E3 Interface Module | |
| DNX Family Product Documentation CD-ROM | 1 |

Lessee Initials: X    Date: 12/20/06

**GE Commercial Finance**
Vendor Financial Services

## N+1 Switch

| | |
|---|---|
| N +1 Protection Switch (for DNX 11 only) | |
| N+ 1 Switch Controller Card | |
| N +1 Switch DC Power Supply | |
| N+1 Narrowband Primary Card | |
| N +1 Narrowband Redundant Card | |
| N +1 Broadband-E Primary Card | 1 |
| N +1 Broadband-E Redundant Card | |

## SUBTOTAL - N+1 Switch Products

## Cables & Accessories

| | |
|---|---|
| N +1 Switch Blank Bezels | |
| Blank bezel for front system manager slots | |
| Blank bezel for front application slots | |
| Blank bezel for rear interface slots | |
| Blank bezel for power supply slots, DNX-11 | |
| VAC to VDC Power Converter (1.5A) | |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable | |
| 50 pin telco to bare wire cable | |
| Harmonics Adapter 50 pin E to 8 RJ-48C | |
| Broadband M/M Coaxial Cable | |
| Expansion cable - XCC to XLC (10') | |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| DSX Flush 23" Rack Mount Adapter Kit | |
| DSX Center 23" Rack Mount Adapter Kit | |

| | |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 11 Slot Equipment Nest | 1 |
| DC Power Supply ( for 11 slot nest) | 0 |
| AC Power Supply (for 11 slot nest) | 2 |
| SMC II w/Stratum 3 clk | 2 |
| Expansion Node Manager (XNM) | 0 |
| SMC II or XNM rear module | 0 |
| SMC IIA or XNMA rear module | 1 |
| Expansion Node Cross Connect App (XCC) | 0 |
| Expansion Node Cross Connect I/E (XCC) | 0 |
| Expansion Link Controller Module (XLC) | 2 |
| Single STS-1 Application Module | 0 |
| Single STS-1 Interface Module | 0 |
| Hybrid DS-3 Application Module | 1 |
| Hybrid DS-3 Interface Module | 1 |
| Octal T1/E1 Application Module | 0 |
| Octal T1/E1 with APS Application Module | 0 |
| Octal T1/E1 Interface Module | 0 |
| Octal HSD Application Module | 0 |
| Octal HSD Interface Module | 0 |
| Quad OCUDP Application Module | 0 |
| Quad OCUDP Interface Module | 0 |

Lessee Initials: X _____    Date: 10/26/06

**GE Commercial Finance**
Vendor Financial Services

| | |
|---|---|
| Single Router Application Module | 0 |
| Single Router Interface Module | 0 |
| Router/8 Application Module | 0 |
| Router/8 Interface Module | 0 |
| Octal Voice Application Module | 0 |
| Octal 4 Wire E & M Interface Module | 0 |
| Octal 2 Wire FXO/DPT Interface Module | 0 |
| Octal 2 Wire FXS Interface Module | 0 |
| STM1 Application Module | 0 |
| OC3 Application Module | 0 |
| OC3/STM1 Optical Nest (X-link) Software | 0 |
| STM1/OC3 Inter. range Interface Module | 0 |
| STM1/OC3 Long range Interface Module | 0 |
| Octal DS0-DP Application Module | 0 |
| Octal DS0-DP Interface Module | 0 |
| E3 Application Module | 0 |
| E3 Interface Module | 0 |

| | |
|---|---|
| DNX Family Product Documentation CD-ROM | 0 |

| **N+1 Switch** | **QTY** |
|---|---|
| N+1 Protection Switch (for DNX 11 only) | 1 |
| N+1 Switch Controller Card | 1 |
| N+1 Switch DC Power Supply | 2 |
| N+1 Narrowband Primary Card | 0 |
| N+1 Narrowband Redundant Card | 0 |
| N+1 Broadband-E Primary Card | 0 |
| N+1 Broadband-E Redundant Card | 1 |

| **Cables & Accessories** | |
|---|---|
| N+1 Switch Blank Bezels | 7 |
| Blank bezel for front system manager slots | 0 |
| Blank bezel for front application slots | 5 |
| Blank bezel for rear interface slots | 7 |
| Blank bezel for power supply slots - DNX-11 | 0 |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable - 15Ft. | |
| 50 pin telco to bare wire cable - 15Ft. | 0 |
| Harmonica Adapter 50 pin F to 8 RJ-48C | |
| Broadband M/M Coaxial Cablem - 15Ft. | |
| Expansion cable - XCC to XLC (10') | 4 |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| PSX Flush 23" Rack Mount Adapter Kit | |
| PSX Center 23" Rack Mount Adapter Kit | |

Lessee Initials: X _____  Date: _____

**EXHIBIT D**



Equipment Finance Services

10 Riverview Drive
Danbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY  10005

Re:    Notice of Assignment - Equipment Schedule No. 4416161-005 (the "Designated Schedule")
incorporating by reference the terms and conditions of that certain Master Note and Security
Agreement dated as of October 31, 2006, both between General Electric Capital Corporation ("GE")
and KGM Circuit Solutions LLC ("Customer").

Ladies and Gentlemen:

       GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents.  From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____
Name: _JoEllen Bentson_____
Title: _Capital Markets Operations - Syndications_

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____
Name: _THOMAS C. OTTO_____
Title: _VICE PRESIDENT_____

**EXHIBIT E**


GE Commercial Finance
Vendor Financial Services

# Lease Agreement
Lease Number 4416161003

| LESSEE NAME: | KGM CIRCUIT SOLUTIONS, LLC | SUPPLIER NAME: | EASTERN RESEARCH, INC. |
|---|---|---|---|
| TRADE/DBA NAME: | CIRCUIT SOLUTIONS | | |
| ADDRESS: | 30 WALL STREET | ADDRESS: | 225 EXECUTIVE DRIVE |
| CITY, STATE, ZIP: | NEW YORK, NY 10005 | CITY, STATE, ZIP: | MOORESTOWN, NJ 08057 |
| CONTACT: | GARY PRESTIPINO   PH: (212) 791-3809 | CONTACT: | PH: (800) 337-4374 |

**EQUIPMENT ADDRESS**
ADDRESS:   30 WALL STREET, NEW YORK, NY 10005

### SCHEDULE OF EQUIPMENT

| Qty | Description of Equipment & Serial Number | | Total Cost |
|---|---|---|---|
| | DATA/VOICE HARDWARE | EQUIPMENT | $39,104.00 |
| | | | |
| | | | |
| | | | |
| ☒ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof | | Total Cost: $39,104.00 |

### SCHEDULE OF RENTAL PAYMENTS

| Lease Term (In Months) | Total Number of Rental Payments | Amount of Each Rental Payment (Plus Applicable Taxes) | Advance Payment (Plus Applicable Taxes) | Documentation Fee | End of Lease Purchase Option |
|---|---|---|---|---|---|
| 36 | 36 | $1,261.78 | $0.00 | $100.00 | ☒ $1.00 Purchase Out |
| | | | | | Last Funding Date: 08/06/06 |

Additional Provisions:

**Important Notice:** We have written this Lease in plain language because we want you to understand its terms. Please read this Lease carefully. The words "you" and "your" mean the Lessee named below. The words "we", "us", and "our" refer to the Lessor named below. BY SIGNING THIS LEASE, YOU AGREE TO THE TERMS ON THE FRONT AND REVERSE SIDES OR SUBSEQUENT PAGES, INCLUDING ALL THE TERMS AND CONDITIONS. THIS LEASE IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US. YOU CERTIFY THAT ALL THE INFORMATION CONTAINED IN THIS LEASE AND YOUR APPLICATION IS CORRECT AND COMPLETE. THIS LEASE IS NOT BINDING UPON US UNTIL WE SIGN IT.

Execution and Delivery of Lease: This Lease will be created and evidenced as follows: (i) we will deliver to you (at the e-mail, facsimile or internet address you provide to us) an electronic (e-mail or facsimile) or paper version of each document to be signed by you, including this Lease and any exhibits or related documents (each, a "Document"), (ii) you will print (if applicable) and manually sign the signature page of each such Document and deliver to us by facsimile or other means the signed signature page; (iii) we will manually sign each signature page so delivered by you (if the Document requires your signature); and (iv) we will attach each fully signed signature page to a printed paper copy of the applicable Document. By so signing and transmitting a Document to us, you confirm your intent to sign such Document and accept its terms. You acknowledge that we are relying upon your promise that you have not modified the Document sent to you for signature. We both intend that each Document produced by this process which contains our original manual signature shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document, and we will promptly send you a copy of each fully signed Document and will retain each original authenticated Document, which will be conclusively presumed to be identical to the version signed by you unless you deliver specific written objections thereto within three (3) business days after receipt of such copy.

| LESSOR: GENERAL ELECTRIC CAPITAL CORPORATION | LESSEE: KGM CIRCUIT SOLUTIONS, LLC |
|---|---|
| By: | Signature: X *Gary Prestipino* |
| Name & Title: | Name & Title: X GARY Prestipino SVP Operations |
| Date: | Date: X 5-12-2006   Fed Tax ID or SSN: X 14 1 84 8081 |

Unconditional Personal Guarantee: In consideration of Lessor entering into the above Lease in reliance on this Guarantee, the undersigned, jointly and severally, if more than one, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, to Lessor, its successors and assigns, the prompt payment and performance of all obligations of Lessee under the Lease, whether such obligations are now or hereafter existing. The undersigned agrees that (a) this is an absolute, continuing and continuing guarantee of payment and not of collection and that Lessor can proceed directly against the undersigned without disposing of any security or seeking to collect from Lessee under the Lease, (b) the undersigned waives all defenses and notices, including those of protest, presentment and demand, (c) Lessor may renew, extend or otherwise change the terms of the Lease without notice to the undersigned and the undersigned will be bound by such changes, and (d) the undersigned will pay all of Lessor's costs of enforcement and collection. This Guarantee survives the bankruptcy of Lessee and binds the undersigned's administrators, successors and assigns. The undersigned's obligations under this Guarantee continue even if Lessee becomes insolvent or bankrupt or is discharged from bankruptcy and the undersigned agrees not to be repaid by Lessee in the event the undersigned must pay Lessor. THIS GUARANTEE WILL BE GOVERNED BY THE LAWS OF THE STATE OF IOWA. EACH OF THE UNDERSIGNED AGREES TO JURISDICTION AND VENUE IN THE STATE OF IOWA. EACH OF THE UNDERSIGNED authorizes Lessor to conduct an investigation of his/her/its credit history and directs his/her/its creditors (including banks, leasing companies and trade suppliers) to release information regarding his/her/its credit to Lessor, its successors and assigns. Each of the undersigned authorizes Lessor to release all information that Lessor may possess about him/her/it to any prospective purchaser of the lease.

| Guarantor: | Guarantor: |
|---|---|
| Signature: X | Signature: X |
| Name & Title printed (if Entity): X | Name & Title printed (if Entity): X |

(Page 1 of 2)

## Terms and Conditions

1. COMMENCEMENT OF LEASE; RENTAL PAYMENTS. You agree to lease from us the Equipment described in this Lease and remit to us Rental Payments (and applicable taxes) for the full Lease Term. Rental Payments will include any freight, delivery, installation and other expenses we finance on your behalf at your request. When you receive the Equipment, you agree to inspect it and to verify by telephone such information as we may require or, at our request, send us a written certificate of acceptance. We do not have to accept this Lease and we are not obligated to purchase a unit of Equipment from Supplier or lease a unit of Equipment to you unless on or before the Last Funding Date indicated on the cover page of this Lease (which is the date the credit approval for this Lease expires): (a) we have received all required documentation in satisfactory form and substance, (b) you have accepted the Equipment in accordance with the terms set forth below, (c) we have received any required Advance Payment, (d) no material adverse change in your business, operations or financial condition occurs, and (e) no Event of Default as described in Section 10 occurs and is then continuing. If we do not accept this Lease, we will return to you any Advance Payment. If all the conditions precedent set forth above have been met and we have accepted this Lease, the Lease Term begins on the date you accept the Equipment (the "Lease Commencement Date"). ONCE WE ACCEPT THIS LEASE, YOU MAY NOT CANCEL IT DURING THE LEASE TERM. If the Lease Commencement Date is not the first or the fifteenth day of any calendar month (a "Payment Date"), the Lease Term will be extended by the number of days between the Lease Commencement Date and the Payment Date which first occurs after the Lease Commencement Date, and your first payment will be increased by 1/30th of the monthly Rental Payment multiplied by the number of days elapsed from the Lease Commencement Date to the day immediately preceding the first Payment Date after the Lease Commencement Date. You authorize us to change the Rental Payment by not more than 15% due to changes in the Equipment configuration or other factors affecting Equipment Cost which may occur prior to our acceptance of this Lease. We will advise you of the due date of each Rental Payment and the address to which you must send your payments, but our failure to so advise you will not release you of your obligations under this Lease. Rental Payments are due whether or not you receive an invoice. Unless otherwise required by applicable law, we are not required to refund any Rental Payment, pay any interest on any Advance Payment, or keep any Advance Payment in a separate account. We may apply the Advance Payment to any amount you owe us under this Lease. Lease Rate Factor: Your periodic Rental Payments are calculated using a lease rate factor (the "Lease Rate Factor"). The Lease Rate Factor is calculated, in part, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of this Lease as published in the Federal Reserve Statistical Release H.15 available at http://www.federalreserve.gov/releases/h15/update/ on or about the date this Lease is prepared by us (the "Initial Rate Date"). The Lease Rate Factor and your periodic Rental Payments may be adjusted if the Swap Rate as reported four (4) business days prior to acceptance of this Lease is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the Lease Rate Factor changes. Notwithstanding the foregoing, if this is a Stated Purchase Option Lease and the Lease Rate Factor is provided to you on or before December 31st of any calendar year, but the Lease Commencement Date is on or after January 1st of the following calendar year, then the Lease Rate Factor and your periodic rental payment will be adjusted to preserve our tax economic yields and cash flows and we will notify you of any such adjustments.

2. TAXES. You agree to pay us, when invoiced, all sales and use taxes and other similar charges imposed relative to this Lease, the Rental Payments or the Equipment. If the Purchase Option amount is $1.00 (a "Dollar Purchase Option"), you agree to file any required personal property tax returns and if we ask, provide us with proof of payment. If the Purchase Option amount is other than $1.00 (a "Stated Purchase Option"), you agree at our option to either (a) reimburse us for all personal property taxes which we may be required to pay as the owner of the Equipment or (b) remit to us each month our estimate of the monthly equivalent of the annual personal property taxes to be assessed. If an increase in the federal corporate income tax rate or a change in the "accelerated cost recovery deductions" allowed by the Internal Revenue Code of 1986, as amended, adversely affects our after-tax earnings on this Lease, we may increase the Rental Payments to offset such adverse effect and a change in the Rental Payments is effective on the effective date of such increase.

3. NET LEASE. THIS LEASE IS A NET LEASE AND YOUR PAYMENT OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, ABATEMENT, REDUCTION, RECOUPMENT, DEFENSE OR SETOFF FOR ANY REASON WHATSOEVER.

4. OWNERSHIP. If this Lease provides for a Dollar Purchase Option, you will have title to the Equipment and will be deemed to be the owner of the Equipment and will be entitled to all tax benefits. If this Lease provides for a Stated Purchase Option, we will have title to the Equipment unless and until you exercise any Purchase Option available to you at the end of the Lease Term. To secure your obligations to us under this Lease, you grant us a first priority security interest in the Equipment and all related proceeds. You irrevocably grant us the power to prepare, sign on your behalf (if applicable), and file, electronically or otherwise, a financing statement and any amendment thereto or continuation thereof relating to the Equipment, and containing any other information required by the applicable Uniform Commercial Code. At our request, you will attach identifying labels supplied by us showing our interest in a prominent position on each unit of Equipment.

5. MAINTENANCE. You will, at your own expense, (a) keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted, free of all claims, liens and encumbrances of any kind or nature, (b) not move the Equipment from the Equipment Location without our prior written consent, (c) use the Equipment solely for commercial purposes in the manner for which it is intended and in compliance with all applicable laws and manufacturer requirements or recommendations, (d) perform all service and maintenance requirements described in the operator's and instrument manuals provided by the manufacturer or Supplier and keep the Equipment eligible for any manufacturer's warranty certification, and (e) give us reasonable access to inspect the Equipment and its maintenance and other records. All additions, upgrades, replacement parts and attachments will become part of the Equipment unless they can be easily removed without damage to the original Equipment. You will not attach any of the Equipment to any real estate. Upon our reasonable request and at your cost, you will get each person with an interest in the real estate where the Equipment is located to waive any rights they may have in the Equipment.

6. DISCLAIMER OF WARRANTIES. You have selected the Equipment. You acknowledge that the Supplier, the manufacturer of the Equipment and their respective representatives are not our agents and are not authorized to modify the terms of this Lease. You are aware of the name of the manufacturer or Supplier of each item of Equipment and you will contact the manufacturer or Supplier for a description of your warranty rights. You agree to settle any dispute you may have regarding performance of the Equipment with the manufacturer or Supplier of the Equipment. WE ARE LEASING THE EQUIPMENT TO YOU "AS-IS". WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES REGARDING THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, ITS DESIGN, MERCHANTABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. WE SHALL HAVE NO LIABILITY TO YOU OR ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE EQUIPMENT OR THIS LEASE. WE WILL NOT BE LIABLE FOR SPECIFIC PERFORMANCE OF THIS LEASE OR FOR ANY LOSSES, DAMAGES, DELAY OR FAILURE TO DELIVER THE EQUIPMENT. THIS LEASE CONSTITUTES A "FINANCE LEASE" AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE. You agree to waive all rights and remedies conferred upon a lessee by Article 2A (Sections 508-522) of the Uniform Commercial Code. To the extent permitted by applicable law, you also hereby waive any rights now or hereafter conferred by statute or otherwise that may limit or modify any of our rights or remedies under this Lease, including any rights you may have which require us to (a) sell any Equipment to mitigate damages or (b) provide you with notices of default, intent to accelerate amounts becoming due or acceleration of such amounts. If you signed a purchase order for the Equipment, you assign to us, without further action on your or our part, all of your rights but none of your obligations with respect to the Equipment and any proceeds thereof and agree to, upon our request, obtain consent from the manufacturer or Supplier of Equipment with respect to such assignment. Unless you are in default under this Lease, you may at your own expense enforce all warranties and other rights directly against the manufacturer.

7. INDEMNITY. You are responsible for, and agree to defend and indemnify us against, all losses, damages, claims, injuries and attorneys' fees incurred or asserted by any person that relate to the Equipment. We reserve the right to control the defense and to select or approve defense counsel. This indemnity survives the expiration or termination of this Lease. If this Lease provides for a Stated Purchase Option, you agree that it was entered into on the assumption that we will be entitled to certain tax benefits available to the owner of the Equipment, and you agree to indemnify us for the loss of any income tax benefit caused by your acts or omissions.

8. LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged, you will (and Rental Payments will continue to accrue without abatement until you): at your option and cost, either (1) repair the item or replace the item with a comparable item reasonably acceptable to us, or (b) pay us a sum equal to (1) all Rental Payments and other amounts then due and payable under this Lease, and (2) the present value of (i) all Rental Payments to become due during the remainder of the Lease Term, and (ii) the Purchase Option amount set forth in this Lease, each discounted at (x) 6% per annum if this Lease provides for a Stated Purchase Option, (y) the lease charge rate (as determined pursuant to Section 16) if this Lease provides for a Dollar Purchase Option, or (z) if such applicable rate is not permitted by law, then at the lowest rate permitted by law (collectively referred to as the "Net Book Value"). We will then transfer to you all our right, title and interest in the Equipment "AS-IS, WHERE-IS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER. Insurance proceeds will be applied toward repair or replacement of the Equipment or payment hereunder, as applicable.

9. INSURANCE. You are responsible for loss and damage to the Equipment from any cause whatsoever on and after delivery thereof. You agree, at your cost to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payee; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we require, naming us as additional insured. Prior to commencement of this Lease and at any time upon our request, you must provide us with evidence of an occurrence type insurance policy covering such risks and liabilities issued by an insurance carrier acceptable to us. The policy must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us.

Flow Document Package

(Continued on Next Page)

MAY 12 2006 12:33

(Page 2 of 2)

## Terms and Conditions

**10. DEFAULT.** An Event of Default will occur if: (a) we do not receive any Rental Payment or other payment within 10 days of its due date, (b) you or any guarantor of your obligations under this Lease ("Guarantor") do not perform any of your or any Guarantor's other obligations under this Lease or such Guarantor's guaranty, and such failure continues for 10 days after we notify you of it, (c) any representation you have made in this Lease or any Guarantor has made in its guaranty shall prove to have been false or misleading in any material respect (d) you or any Guarantor become insolvent, are liquidated or dissolved, merge, transfer substantially all of your or its stock or assets, stop doing business or assign your or its rights or property for the benefit of creditors, (e) a petition is filed by or against you or any Guarantor under any bankruptcy or insolvency law, (f) if you are a sole proprietorship, you die or have a guardian appointed, (g) any Guarantor dies or has a guardian appointed, or (h) you default on any other agreement between you and us (or our affiliates).

**11. REMEDIES.** If an Event of Default occurs, we may, in our sole discretion, do any or all of the following: (a) cancel or otherwise terminate this Lease or any other Lease or agreement between you and us, (b) require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, a sum equal to the Net Book Value, (c) require you to return the Equipment in accordance with Section 13, (d) repossess the Equipment without court order and you will not make any claims against us (or our agent) for damages or trespass or any other reason if we take such action, and (e) exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, including attorneys' fees. We may, but will have no obligation to, sell or otherwise dispose of the Equipment at either public or private sale, with or without notice to you, at a public or private sale, and without any duty to account to you with respect to such action or inaction or for any proceeds with respect thereto. You agree that (a) if notice of sale is required by law, five days advance notice will constitute reasonable notice, (b) we may apply the proceeds of any sale or other disposition of the Equipment (after deducting all costs and expenses related to the repossession, sale or other disposition) to the amounts you owe us, (c) you will remain responsible for any balance which may remain after we apply such net proceeds, and (d) we will retain all rights and remedies even if we do not choose to enforce them at the time of your default. If this Lease provides for a Dollar Purchase Option and we receive more than the Net Book Value plus our costs and expenses, we will remit any excess to you.

**12. END OF LEASE OPTIONS.** If this Lease provides for a Dollar Purchase Option and you are not in default, we will release any security interest we have in the Equipment at the end of the Lease Term. If this Lease provides for a Stated Purchase Option and you are not in default, you will have the option at the end of the Lease Term to (a) return the Equipment in accordance with Section 13, (b) extend the Lease Term for a new term upon the terms and conditions set forth in this Lease, or (c) on 60 days advance written notice to us, purchase all but not less than all of the Equipment for the Purchase Option amount (and all applicable taxes). If the Purchase Option is stated as a percentage, the Purchase Option amount will be the product of such percentage multiplied by the final Equipment Cost. If the Purchase Option is stated as FMV, FMV will mean the fair market, in place value of the Equipment at the end of the Lease Term, assuming good condition (except for ordinary wear and tear), as estimated by us. Upon payment of the applicable amount, we will transfer the Equipment to you "AS IS, WHERE IS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER. IF YOU FAIL TO EXERCISE THE PURCHASE OPTION, ALL OF YOUR OBLIGATIONS UNDER THIS LEASE WILL CONTINUE UNTIL THE EQUIPMENT IS RETURNED IN ACCORDANCE WITH SECTION 13.

**13. RETURN OF EQUIPMENT.** If (a) an Event of Default occurs, (b) you do not purchase the Equipment at the end of the Lease Term, or (c) you do not extend the Lease Term, at your cost and risk you will promptly (i) place the Equipment in good order and condition (except for ordinary wear and tear from normal use), (ii) cause the Equipment to be disassembled, deinstalled, inspected, tested and crated in accordance with the manufacturer's recommendations and any and all local, state and federal regulatory requirements then in effect, (iii) immediately return the Equipment, freight and insurance prepaid, at your risk to any location and aboard any carrier we may designate in the continental United States, and (iv) pay a return fee of $100, not to exceed the maximum permitted by law, as reasonable compensation for our costs in processing returned Equipment. Any such Equipment will be accompanied by all accessories originally included with the Equipment, qualifies (if applicable) for continued maintenance under a manufacturer's service and maintenance contract, and includes the latest software release provided by the manufacturer or Supplier to you. You will continue to remit Rental Payments until the first day of the month which follows the date the Equipment is received by us in the condition required by this Lease.

**14. ASSIGNMENT. YOU WILL NOT SELL, ASSIGN OR SUB-LEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE, OR FILE OR PERMIT A LIEN TO BE FILED AGAINST THE EQUIPMENT** We may, without notifying you, (a) release any information we possess about you and this Lease to any prospective investor, participant or purchaser of this Lease, and (b) sell, assign, or transfer this Lease and our interests in the Equipment. You agree that the new owner or any of our assignees and transferees will have the same rights and benefits that we now have under this Lease but none of our obligations. The rights of the new owner or any of our assignees and transferees will not be subject to any claim, defense, or set-off that you may have against us.

**15. PAST DUE PAYMENTS.** We may charge you a late charge equal to 10% of any late payment, but not more than the highest legal rate. Any Rental Payments not made when due and other payment obligations incurred as a result of an Event of Default will accrue interest at the lower of 18% per annum or the highest legal rate from their due date until paid.

**16. COMPLIANCE WITH LAWS.** You understand that the Equipment may be purchased for cash for an amount equal to the cost thereof or it may be leased. By signing this Lease, you acknowledge that you have chosen to lease the Equipment from us for the Lease Term and agreed to remit Rental Payments and other sums to us. If this Lease provides for a Dollar Purchase Option, or a Stated Purchase Option that constitutes a nominal percentage of the Equipment Cost, each Rental Payment includes a principal amount based on the Equipment Cost and a lease charge rate. The lease charge portion of the Rental Payment can be determined by applying to the Equipment Cost the rate that will amortize the Equipment Cost down to the Purchase Option amount by remittance of the Rental Payments. The lease charge rate may be higher than the actual annual interest rate because of the amortization of certain costs and expenses incurred by us. WE BOTH INTEND TO COMPLY WITH ALL APPLICABLE LAWS. IF IT IS DETERMINED THAT YOUR PAYMENTS UNDER THIS LEASE RESULT IN AN INTEREST PAYMENT HIGHER THAN ALLOWED BY APPLICABLE LAW, THEN ANY EXCESS INTEREST COLLECTED WILL BE APPLIED TO AMOUNTS THAT ARE LAWFULLY DUE AND OWING UNDER THIS LEASE OR WILL BE REFUNDED TO YOU. IN NO EVENT WILL YOU BE REQUIRED TO PAY ANY AMOUNTS IN EXCESS OF THE LEGAL AMOUNT.

**17. YOUR REPRESENTATIONS.** You represent and warrant that (a) you have the lawful power and authority to enter into this Lease, (b) the individuals signing this Lease have been duly authorized to do so on your behalf, (c) by entering into this Lease you will not violate any law or other agreement to which you are a party, (d) you are not aware of anything that will have a material adverse effect on your ability to satisfy your obligations under this Lease, (e) all financial information you have provided and will provide to us is true, correct and complete and provides an accurate representation of your financial condition, and (f) the location of your chief executive office, state of incorporation or organization, exact legal name, place of residence and organizational identification number, as applicable, have been correctly identified to us.

**18. MISCELLANEOUS.** You agree that during the Lease Term (a) you will promptly notify us in writing if there is a change in the name, ownership, state of incorporation or formation or organizational number (if any) of your business, or if there is a change in your ownership, (b) you will provide such financial information we may reasonably request, (c) you will take any action we reasonably request to protect our rights in the Equipment and this Lease, and (d) we may insert missing information or correct obvious errors or your legal name in this Lease without further notice to you. This Lease constitutes the entire agreement between you and us and supersedes any conflicting equipment purchase order or other written or oral agreement. Except as provided in this Lease, no modification of this Lease will be binding unless in writing and signed by you and us. You authorize us (or our agent) to (i) obtain personal credit bureau reports, (ii) make all other credit inquiries we deem necessary, and (iii) furnish payment history information to credit reporting agencies. You agree to pay us a fee shown on the cover page of this Lease to cover our documentation and investigation costs. Any claim you have against us must be made within one year after the event that caused it. TIME IS OF THE ESSENCE IN THIS LEASE. If a court finds any provision of this Lease to be unenforceable, the remaining terms will remain in effect. If you fail to comply with any provision of this Lease, we have the right but not the obligation to have such provision brought into compliance and all expenses we incurred in bring about such compliance will be considered a Rental Payment which is due within five (5) days after the date we send to you a written request for payment. All our and your written notices must be sent by certified or first class mail or recognized overnight delivery service, postage prepaid, to you at your address set forth on the cover page of this Lease or our address at 1010 Thomas Edison Boulevard S.W., Cedar Rapids, Iowa 52404, Telephone No. (800) 535-1460,or by facsimile transmission to you at your facsimile telephone number set forth on the cover page of this Lease or to us at our facsimile telephone number (319) 841-6324, with oral confirmation of receipt. At any time after this Lease is signed, you or we may change an address or facsimile telephone number by giving notice to the other of the change. You hereby acknowledge and confirm that you have not received any tax, financial, accounting or legal advice from us, the manufacturer or Supplier of the Equipment.

**19. CHOICE OF LAW.** THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE STATE OF IOWA. BOTH PARTIES CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN IOWA FOR ALL DISPUTES ARISING UNDER THIS LEASE AND WAIVE ANY RIGHTS TO A JURY TRIAL IN ANY ACTION ARISING UNDER THIS LEASE.

**20. COUNTERPARTS.** This Lease may be executed in separate counterparts, all of which shall together constitute one and the same instrument. IF THIS LEASE CONSTITUTES CHATTEL PAPER (AS DEFINED IN THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS LEASE MAY BE CREATED THROUGH THE TRANSFER OR POSSESSION OF ANY COUNTERPART OTHER THAN THE ORIGINAL COUNTERPART IDENTIFIED BY US AS THE SOLE ORIGINAL CHATTEL PAPER COPY.

(Lessee: Please initial here _____ to confirm that you have received and read both pages of the Terms and Conditions)

Flow Document Package

MAY 12 2006 12:34

*Please remember to reference Account Schedule #(s) pertaining to your request(s).*

**Phone:** 800-327-9701
**Fax:** 319-841-6324

*Correspondence Only: PO BOX 3083*
*CEDAR RAPIDS IA 52406-3083*

## GE Capital

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

**Our Federal Tax ID # 131500700**

981/8  08/21/06   10:00     09/19/07   AI  0001009   GEVIAS01   001   002   1-OUNCE

CIRCUIT  SOLUTIONS
C/O  WESTCOM
ATTN:  ACCOUNTS PAYABLE
162  5TH  AVE
NEW YORK  NY  10010

| Billing ID Number | 90133713947 |
|---|---|
| Invoice Number | 66088274 |
| Invoice Date | 09/09/2007 |
| *Due Date:* | 10/01/2007 |
| *Current Items Due:* | 1,430.54 |
| *Total Amount Due:* | 5,532.89 |

OEPAE

000

## INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase Order Number Equipment Description | Line Item Amount | Acct/Sched Total |
|---|---|---|---|---|
| 4416161-003* | | REFERENCE NUMBER      4416161007 DATA/VOICE HARDWARE          SERIAL NUMBER _____          MODEL   NUMBER _____       – LOCATION:          30 WALL STREET          NEW YORK NY 10005 | | |
| | 10/01/2007 | PAYMENT/INSTALLMENT DUE SALES/USE TAX ON PAYMENT | 1,261.78 105.67 | |
| | 08/01/2007 | LATE CHARGES DUE | 63.09 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

*To ensure proper credit, detach and*
*return this portion with your payment.*
*Please include your billing ID Number*
*on your check.*

CIRCUIT SOLUTIONS
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

☐ *Please check here if your address or equipment*
*location has changed and complete reverse side.*

| Billing ID Number | 90133713947 |
|---|---|
| Invoice Number | 66088274 |
| *Due Date:* | 10/01/2007 |
| *Current Items Due:* | 1,430.54 |
| *Total Amount Due:* | 5,532.89 |

OEPAE

000

GE CAPITAL
P.  O.  BOX 642555
PITTSBURGH  PA  15264-2555

5901337139476608827400000143054000005532896608827438l5

**EXHIBIT F**



**GE Commercial Finance**
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 005

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS, LLC

Lender Name: GENERAL ELECTRIC CAPITAL CORPORATION

| Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | SYSTEM SOFTWARE - CURRENT GA RELEASE | |
| | ☑ See attached Exhibit A for full schedule of equipment and software, attached hereto and made part hereof. | |

Equipment Location: 30 WALL STREET , NEW YORK, NY 10005

Equipment Supplier: EASTERN RESEARCH, INC.

ACCEPTANCE NOTICE As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date");
(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;
(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;
(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS, LLC

By: X _____

Name: X  Kevin Gorl

Title: X  Member

Acceptance Date: X  10/06/06

 GE Commercial Finance

**Exhibit A to Schedule and Certificate of Acceptance**

KGM CIRCUIT SOLUTIONS, LLC
4416161002

| DESCRIPTION | QTY. |
|---|---|
| System Software - Current GA Release | |
| DMX 11 Slot Equipment Nest | |
| DC Power Supply (for 11 slot nest) | |
| AC Power Supply (for 11 slot nest) | |
| SMC II Workstation Deck | |
| Expansion Nest (Assignable MM) | |
| SSC II or XXM main module | |
| SMC II/XXM rear module | |
| Expansion Matrix Cross Connect Appl (XCC) | |
| Expansion Nodal Cross Connect IF (XCC) | |
| Expansion Link Controller Module (XLC) | |
| Single STS-1 Application Module | |
| Single STS-1 Interface Module | |
| Hybrid OC-3 Application Module | |
| Hybrid OC-3 Interface Module | |
| Octal T1/E1 Application Module | |
| Octal T1/E1 with APS Application Module | |
| Octal T1/E1 Interface Module | |
| Octal HSD Application Module | |
| Octal HSD Interface Module | |
| Quad DCUDP Application Module | |
| Quad DCUDP Interface Module | |
| Single Router Application Module | |
| Single Router Interface Module | |
| Router II Application Module | |
| Router II Interface Module | |
| Octal Voice Application Module | |
| Octal 4 Wire E & M Interface Module | |
| Octal 3 Wire FXO/FXS Interface Module | |
| Octal 2 Wire FXS Interface Module | |
| STM-1 Application Module | |
| OC3 Application Module | |
| OC3/STM-1 Optical Short range Software | |
| STM-1/OC3 Inter. range Interface Module | |
| STM-1/OC3 Long range Interface Module | |
| Octal DSO-DP Application Module | |
| Octal DSO-DP Interface Module | |
| E3 Application Module | |
| E3 Interface Module | |

Lessee Initials: X_____    Date: 5-17-06


GE Commercial Finance
Vendor Financial Services

| | |
|---|---|
| NEN Protection System for DS3 (1 Slot) | 4 |
| NEN Switch Controller Card | 1 |
| NEN Switch DC Power Supply | 2 |
| NEN Narrowband Primary Card | 0 |
| NEN Narrowband Redundant Card | 0 |
| NEN Broadband Primary Card | 1 |
| NEN Broadband Redundant Card | 1 |

| | |
|---|---|
| NEN Carrier Blank Bezel | 1 |
| Blank bezel for fault system manager slot | 0 |
| Blank bezel for front application slot | 0 |
| Blank bezel for rear uplink slot | 5 |
| Blank bezel for power supply slot (DBEW) | 0 |
| DSX Patch Panel (4 port) | 4 |
| 50 pin to 50 pin data cable (10ft) | 0 |
| 50 pin telco to bare wire cable (10ft) | 4 |
| Terminal Adapter 50 pin Telco V.35DCE | 0 |
| Broadband Mini Coaxial Patch Panel (96) | 4 |
| Expansion cable XDC to XDC (10ft) | 4 |
| Expansion cable XDC to XDC (2ft) | 10 |
| DBEW Flush 23" Rack Mount Adapter Kit | 4 |
| DBEW Center 23" Rack Mount Adapter Kit | 0 |
| PSX Flush 23" Rack Mount Adapter Kit | 4 |
| PSX Center 23" Rack Mount Adapter Kit | 0 |

Lessee Initials: X_____    Date: 5-12-06

MAY 12 2006 12:39

**EXHIBIT G**

GE
Capital Solutions

Equipment Finance Services

10 Riverview Drive
Danbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY 10005

Re:    Notice of Assignment - Equipment Schedule No. 4416161-003 (the "Designated Schedule")
       incorporating by reference the terms and conditions of that certain Master Lease Agreement dated as
       of August 2, 2006, both between General Electric Capital Corporation ("GE") and KGM Circuit
       Solutions LLC ("Customer").

Ladies and Gentlemen:

       GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents. From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____
Name: JoEllen Benson
Title: Capital Markets Operations - Syndications

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____
Name: _Thomas C. Otto_____
Title: _Vice President._____

**EXHIBIT H**

GE Commercial Finance
Vendor Financial Services

Agreement # dd16161

## Master Note and Security Agreement

"Master Agreement" means this Master Note and Security Agreement. "Schedule" means any Payment Schedule signed by you and us that incorporates the terms of this Master Agreement. "Note" means this Master Agreement and any Schedule. "Lender" means General Electric Capital Corporation and is also referred to as "we", "us" and "our". "Borrower" means the entity or individual identified below and is also referred to as "you" and "your". "Equipment" means the equipment described on each Schedule. "Collateral" has the meaning given to such term in Section 5 below.

### TERMS AND CONDITIONS

1. COMMENCEMENT OF SCHEDULE. Commencement of a Schedule (the "Commencement Date") will occur upon our funding of the Original Principal Balance of the Schedule to you or your designee; provided that we do not have to fund the Original Principal Balance of a Schedule to you or your designee unless on or before the Last Funding Date indicated on such Schedule (which is the date the credit approval for such Schedule expires): (a) we have received all required documentation (including confirmation of acceptance) in satisfactory form and substance and any required Advance Payment, (b) no material adverse change in your business, operations or financial condition occurs, and (c) no Default as described in Section 11 occurs and is then continuing. YOUR OBLIGATIONS TO REMIT PAYMENTS TO US UNDER EACH NOTE SHALL BE ABSOLUTE, UNCONDITIONAL AND NONCANCELLABLE, AND SHALL BE COMPLETELY INDEPENDENT OF ANY DEFECT OR DAMAGE TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR LOSS OF POSSESSION OR USE OF THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR ANY FAILURE ON THE PART OF ANY PARTY TO PERFORM ANY MAINTENANCE OR SERVICES RELATED TO THE EQUIPMENT (OR ANY OTHER COLLATERAL) OR MAKE ANY PAYMENTS RELATED THERETO, AND SHALL NOT BE SUBJECT TO ANY SET-OFFS, ABATEMENTS, SUSPENSIONS, DEFERMENTS, REDUCTIONS, CLAIMS, COUNTERCLAIMS OR DEFENSES OF ANY NATURE WHATSOEVER.

2. DISCLAIMER. YOU ACKNOWLEDGE AND AGREE THAT: (a) WE ARE NOT THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT (OR OF ANY OTHER COLLATERAL) OR ANY PART THEREOF OR THE AGENT OF EITHER THE SUPPLIER OR MANUFACTURER; (b) YOU HAVE SELECTED THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL AS SUITABLE FOR YOUR PURPOSES BASED SOLELY UPON YOUR OWN JUDGMENT WITHOUT ANY ASSISTANCE FROM US OR OUR AGENTS OR EMPLOYEES; (c) YOU EXPRESSLY DISCLAIM RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS OR EMPLOYEES; (d) THE EQUIPMENT AND (AS APPLICABLE) ANY OTHER COLLATERAL IS OF A DESIGN, SIZE, FITNESS AND CAPACITY SELECTED BY YOU AND THAT YOU ARE FULLY SATISFIED THAT THE SAME IS SUITABLE AND FIT FOR ITS PURPOSES; AND (e) WE DO NOT MAKE, HAVE NOT MADE, NOR SHALL WE BE DEEMED TO MAKE OR HAVE MADE, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO ANY PART OF THE EQUIPMENT (OR AS APPLICABLE) ANY OTHER COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FITNESS FOR ANY PARTICULAR PURPOSE, USE OR MERCHANTABILITY, OR ANY WARRANTY AS TO THE DESIGN, COMPLIANCE WITH SPECIFICATIONS, COMPLIANCE WITH APPLICABLE LAW, USE OR OPERATION OR CONDITION OR CAPACITY, OR AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP, OR AS TO SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT. ALL SUCH RISKS, AS BETWEEN YOU, AND US ARE TO BE BORNE, BY YOU. WE SHALL HAVE NO LIABILITY TO YOU OR TO ANY THIRD PARTY FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES RELATING TO THE USE OF THE EQUIPMENT, ANY OTHER COLLATERAL, OR OTHERWISE.

3. NOTE PAYMENTS; ADJUSTMENTS. You agree to remit to us the Note Payments (as set forth in the Schedule) and all other sums when due and payable each Billing Period at the address we provide to you from time to time. Your Note Payment is calculated, in art, using an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the initial term of the Note as published in the Federal Reserve Statistical Release H.15 (available at http://www.federalreserve.gov/release/h15/update/) on the date we either prepare the

corresponding Schedule or (if applicable) send you a written financing proposal/quote relating to the Equipment (the "Initial Rate Date"). The interest rate and your Note Payment may be adjusted if the Swap Rate as reported 4 business days prior to acceptance of the Equipment is different than the Swap Rate as reported on the Initial Rate Date. We will notify you if the interest rate changes. If the invoiced amount for the Equipment relating to a Schedule is more than the Original Principal Balance shown on that Schedule due to changes in Equipment configuration or other cost factors affecting such invoiced amount, and if such an increase is within the dollar limits and time limits of our credit approval, you authorize us to increase the Original Principal Balance by not more than 15% and adjust your Note Payment (using the Interest Rate then applying to the Schedule). We will notify you of any such adjustment.

4. OTHER CHARGES. You agree to: (a) pay all costs and expenses associated with the ownership, use, maintenance, servicing, repair or replacement of the Equipment and (as applicable) any other Collateral and (b) pay all premiums and other costs of insuring the Equipment and (as applicable) any other Collateral. In addition, you will (1) reimburse us for all costs and expenses (including reasonable attorneys' fees and court costs) incurred in enforcing the Note and (2) pay all other costs and expenses for which you are obligated under the Note, including any Document Fee specified in the Schedule (the "Other Charges"). You agree to file all required property and other tax returns and pay all property and other taxes promptly, which may be assessed against the Equipment or against any of the other Collateral. We may take on your behalf any action required under the Note, which you fail to take, and upon receipt of our invoice you will promptly pay our costs, plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25.00 for any check, which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

5. SECURITY INTEREST. As security for the payment of any of your obligations and liabilities of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to us pursuant to this Master Agreement and any extensions and modifications hereof (any and all of which are sometimes referred to hereafter as the "Indebtedness"), you hereby give, grant and assign to us, our successors and assigns, a continuing first perfected security interest in the Equipment, all repairs, accessories, additions, parts, supplies, attachments, devices, replacements and substitutions for or accessions to such property, all software used in connection with such property, all insurance or other proceeds of such property, all accounts, contract rights, documents, instruments, accounts receivable, general intangibles, chattel paper and books and records directly or indirectly related to the foregoing and all your security deposits, revenues or other funds or property in possession of or in transit to us (all herein referred to collectively as the "Collateral"). You hereby authorize us to prepare and file, electronically or otherwise, a financing statement and any amendment thereto or continuation or assignment thereof relating to our interest in the Collateral, and containing any other information required by the applicable Uniform Commercial Code. A photostatic copy or other reproduction of this Master Agreement or of a financing statement shall be sufficient as a financing statement.

6. LATE CHARGES. For any payment, which is not received by its due date, you agree to pay a late charge equal to the higher of 10% of the amount due or $22.00 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

[Continued on next page]

BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS MASTER AGREEMENT AND EACH SCHEDULE WILL BE GOVERNED BY THE LAWS OF IOWA. BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS YOU AND WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS YOU AND WE MAY LATER AGREE IN WRITING TO MODIFY IT.

| GENERAL ELECTRIC CAPITAL CORPORATION | KGM CIRCUIT SOLUTIONS LLC |
| 1010 Thomas Edison Blvd, Cedar Rapids, IA 52404 | Full Legal Name |
| By: _Diana A Graham_ | By/IFA |
| Name: _Diana L. Graham_ | By: _Maggie Foster_ |
| Title: _CM_ | Name: _Maggie Foster_ |
| Date: _10/30/06_ | Title: _CAO_ |
| | Date: _11-2-06_ / _11/2/06_ |

GE Commercial Finance
Vendor Financial Services

7.  MAINTENANCE AND REPAIR. You must keep the Equipment and any other Collateral free of liens (other than our lien.) You may not remove the Equipment or (as applicable) any other Collateral from the address indicated on the front of a Schedule without first obtaining our approval. You agree to: (a) keep the Equipment and any other Collateral in your exclusive control and possession; (b) USE THE EQUIPMENT AND ANY OTHER COLLATERAL ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES; (c) use the Equipment and any other Collateral in conformity with all insurance requirements, manufacturer's instructions and manuals; (d) keep the Equipment and (as applicable) any other Collateral repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (e) give us reasonable access to inspect the Equipment and (as applicable) any other Collateral and the related maintenance and other records.

8.  INDEMNITY. YOU ARE RESPONSIBLE FOR ALL LOSSES, DAMAGES, CLAIMS, INFRINGEMENT CLAIMS, INJURIES AND ATTORNEYS' FEES AND COSTS (collectively "CLAIMS"), INCURRED OR ASSERTED BY ANY PERSON, IN ANY MANNER RELATING TO THE EQUIPMENT OR ANY OTHER COLLATERAL, INCLUDING THE USE, CONDITION OR POSSESSION OF SUCH EQUIPMENT OR SUCH OTHER COLLATERAL. YOU AGREE TO DEFEND AND INDEMNIFY US AGAINST ALL CLAIMS, ALTHOUGH WE RESERVE THE RIGHT TO CONTROL THE DEFENSE AND TO SELECT OR APPROVE DEFENSE COUNSEL.  .THIS INDEMNITY CONTINUES BEYOND THE TERMINATION OF THIS AGREEMENT AND/OR THE TERMINATION OF ANY SCHEDULE.

9.  LOSS OR DAMAGE. If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) promptly repair the item or replace the item with a comparable item reasonably acceptable to us (along with repairing or replacing any other Collateral lost, stolen or damaged); or (b) pay us the sum of: (i) all past due and current Note Payments, (ii) the then remaining principal balance of the applicable Note (after application of item (b)(i)), and (iii) all Other Charges. In the event you exercise option (a) above and replace the Equipment you will, (A) notify us of such replacement within 30 days of the date the Equipment is lost, stolen or damaged and (B) replace the Equipment with an item of like or better kind of equipment by the same manufacturer. In the event you exercise option (b) above, we will then release our security interest in the Collateral. Insurance proceeds will be applied toward repair, replacement or payment hereunder, as applicable.

10.  INSURANCE. You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming you and us as loss payees as our interests may appear; and (b) maintain public liability insurance, covering personal injury and property damage in such amount as we may require, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us. Upon our request, prior to the Commencement Date of a Schedule and at any time thereafter, you must provide us with evidence of such insurance coverages.

11.  DEFAULT. You will be in default ("Default") under the Note if: (a) you fail to remit to us any payment within 10 days of the due date or breach any other obligation under the Note; (b) a petition is filed by or against you under any bankruptcy or insolvency law; or (c) you default under any other agreement with us or any of our affiliates.

12.  REMEDIES. Upon the occurrence of a Default, we, at our option, may declare all of the obligations and liabilities secured by this Master Agreement and all Notes to be immediately due and payable, without demand or notice to you. The obligations and liabilities accelerated thereby shall bear interest at the lower of 18% per annum or the maximum rate allowed by applicable law. Upon the occurrence of a Default, we may, in our sole discretion, elect to foreclose or realize upon the Collateral. Should we elect to foreclose or realize upon the Collateral, you expressly agree that your rights under and interests in the Collateral shall be (to the maximum extent permitted under applicable law) automatically, and without any further action required of any party, assigned and conveyed to us, but that we shall have no obligations or liabilities related to the Collateral, all of which shall remain with you. You agree to execute and deliver to us (or our designee) such agreements, documents and instruments as may be necessary, in our sole discretion, to effect such assignment and conveyance. Upon such assignment and conveyance, you expressly acknowledge that we may exercise any of the rights related to the Collateral to the exclusion of you. In addition, we may exercise all rights and remedies available to us under the law and Uniform Commercial Code as now

enacted or as may be from time to time amended and, in conjunction with, addition to or substitution for these rights and remedies, at our discretion, we may, in conformity with applicable law (i) enter upon your premises and take possession of, assemble and collect the Collateral or to render it unusable, (ii) require you to assemble the Collateral and make it available at a place we designate which is mutually convenient, to allow us to take possession or dispose of the Collateral, (iii) sell the Collateral at public or private sale, whether or not the Collateral is in our constructive possession, in one or more sales, as an entirety or in parcels, and be, at our election, the purchaser at any such sale; and/or (iv) lease or otherwise dispose of all or part of the Collateral applying the resulting proceeds to all expenses in connection with the taking and sale or lease of Collateral, and any balance of such proceeds toward the payment of your obligations in such order of application as we may from time to time elect, provided that any proceeds we receive in excess of your obligations will be remitted to you or (as the case may be) the party otherwise lawfully entitled thereto.

Without limitation to the foregoing, it is agreed that upon 5 days' notice to you and within 6 months of repossession (i) any private sale of the Collateral in "as is" condition at wholesale including, without limitation, sales based on bids received from dealers, manufacturers or otherwise, or (ii) any lease of the Collateral, in both events without the need for advertising, shall be a commercially reasonable disposition of the Collateral. In no event will blue book, black book, NADA or other published price lists be determinative of the commercial reasonableness of any disposition of the Collateral. Notwithstanding any repossession or any other action which we may take with respect to the Collateral, you shall be and remain liable for any deficiency and for the full performance of all obligations on your part to be performed. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately.  . . .

13.  ASSIGNMENT. YOU MAY NOT ASSIGN OR DISPOSE OF ANY RIGHTS OR OBLIGATIONS UNDER THE NOTE OR WITH RESPECT TO THE EQUIPMENT OR WITH RESPECT TO ANY OTHER COLLATERAL OR LEASE THE EQUIPMENT, WITHOUT OUR PRIOR WRITTEN CONSENT. We may, without notifying you, (a) assign all or any portion of our interest in the Note or all or any portion of our interest in the Equipment or any other Collateral; and (b) release information we have about you and the Note to the manufacturer, supplier or any prospective investor, participant or purchaser of the Note. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under the Note (to the extent of such assignment), but none of our obligations (unless we and such assignee agree otherwise in writing). You agree not to assert against our assignee claims, offsets or defenses you may have against us.

14.  MISCELLANEOUS. Notices must be in writing and will be deemed given 5 days after mailing to your or (as the case may be) our business address. You represent that: (a) you have authority to enter into the Note and by so doing you will not violate any law or agreement; and (b) the Note is signed by your authorized officer, representative or agent. The Note is the entire agreement between you and us, and cannot be modified except by another document signed by you and us. The Note is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us or our representatives to: (a) obtain credit reports and make credit inquiries; and (b) furnish your payment history to credit reporting agencies. Any claim you have against us must be made within 2 years after the event, which caused it. If a court finds any provision of the Note to be unenforceable, all other terms will remain in effect and enforceable.  You authorize us to insert or correct missing information on the Note, including the Commencement Date, your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of a Schedule, you agree to pay a fee for such privilege.

15.  LIMITATIONS ON CHARGES.  This Section controls over every other part of this Master Agreement and over all other documents now or later pertaining to the Note. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Master Agreement that could, but for this Section, be read under any circumstances to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under the Note to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under the Note, or refunded to you.

Borrower's    initial _____



*Please remember to reference Account Schedule #(s) pertaining to your request(s).*
Phone: 800-327-9701
Fax:    319-841-6324

Correspondence Only: PO BOX 3083
CEDAR RAPIDS IA 52406-3083

## GE Capital

GE CAPITAL
P. O. BOX 642555
PITTSBURGH PA 15264-2555

### Our Federal Tax ID # 131500700

981B  08/21/06   10:09   09/10/07  AI  0001088  GEVIAS01  001  002  1-OUNCE

KGM CIRCUIT  SOLUTIONS LLC
C/O  WESTCOM
ATTN:  ACCOUNTS PAYABLE
162  5TH  AVE
NEW YORK NY 10010

| Billing ID Number | 90133740113 |
|---|---|
| Invoice Number | 65901415 |
| Invoice Date | 08/08/2007 |
| Due Date: | 09/01/2007 |
| Current Items Due: | 679.77 |
| Total Amount Due: | 2,621.97 |

CEFNE

000

### INVOICE FOR CURRENT ITEMS DUE

| Account Schedule Number | Due Date | Purchase Equipment | Order Number Description | Line Item Amount | Acct/Sched Total |
|---|---|---|---|---|---|
| 4416161-002* | | REFERENCE NUMBER      4416161006 MODERN CABLE | | | |
| | | - LOCATION: 111 8TH AVE NEW YORK NY 10015 | | | |
| | 09/01/2007 | PAYMENT/INSTALLMENT DUE | | 647.40 | |
| | 07/01/2007 | LATE CHARGES DUE | | 32.37 | |

SERVICE.LEASINGSOURCE.COM
PAY BILLS ONLINE.

*To ensure proper credit, detach and*
*return this portion with your payment.*
*Please include your billing ID Number*
*on your check.*

KGM CIRCUIT SOLUTIONS LLC
C/O WESTCOM
ATTN: ACCOUNTS PAYABLE
162 5TH AVE
NEW YORK NY 10010

| Billing ID Number | 90133740113 |
|---|---|
| Invoice Number | 65901415 |
| Due Date: | 09/01/2007 |
| Current Items Due: | 679.77 |
| Total Amount Due: | 2,621.97 |

CEFNE
000

GE CAPITAL
P.  O.  BOX 642555
PITTSBURGH PA 15264-2555

☐ *Please check here if your address or equipment*
*location has changed and complete reverse side.*

590133740113659014150000006797700000262197659014153814

**EXHIBIT I**



**GE** Commercial Finance
Vendor Financial Services

Master Note and Security Number: 4416161
Schedule Number: 002

## DELIVERY AND ACCEPTANCE NOTICE

Borrower Name: KGM CIRCUIT SOLUTIONS LLC          Lender Name: GENERAL ELECTRIC CAPITAL CORPORATION

| Quantity | Equipment Model and Description | Serial Number |
|---|---|---|
| | DATA/VOICE HARDWARE - ☑ See attached Exhibit A for full schedule of equipment and software, attached herein and made part hereof. | |
| | | |
| | | |

Equipment Location: 80 WALL STREET, NEW YORK NY 10005  *111 8th Ave N.Y. N.Y.*

Equipment Supplier: EASTERN RESEARCH, INC.

ACCEPTANCE NOTICE As evidenced by this Delivery and Acceptance Notice, Borrower, through its authorized representative certifies to Lender that:

(a) All the Equipment (to include any software being financed in connection with the Equipment) has been delivered to and inspected by Borrower on the date set forth below (the "Acceptance Date");

(b) Borrower has irrevocably accepted the Equipment as of the Acceptance Date;

(c) No event which would allow the Lender to declare a Default (as defined in Section 11 of the Master Note and Security Agreement) has occurred, and all of the representations and warranties made in the Master Note and Security Agreement by the Borrower are true as of the Acceptance Date;

(d) Borrower hereby expressly authorizes Lender to insert the Acceptance Date in the space below upon the verbal instruction of Borrower.

Borrower: KGM CIRCUIT SOLUTIONS LLC

By:   X  *Maggie Foley*

Name:  X  *MAggie Foley*

Title:  X  *CAO*

Acceptance Date:  X  *4/24/06*   *10/27/06*

*Anthony Lanch   000521-1140*



GE Commercial Finance
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS LLC
441616100²

| Description | Qty |
|---|---|
| SPS-1000 Chassis (DC) | |
| SPS-1000 Chassis (AC) | 1 |
| SPS-1000 Power Supply (DC) | |
| SPS-1000 Power Supply (AC) | 2 |
| SPS-1000 Fan Tray (Front) | 1 |
| SPS Octal T1/E1-DBFM1 Module (Front) | 1 |
| SPS Octal T1/E1 Module (Rear) | 1 |
| SPS Conferencing Bridge (1 copy per Module Set) | 1 |
| **Cables & Accessories** | |
| (50-Pin) TELCO to 8 Individual RJ48C (crossover) | 1 |
| SPS-1000 Blank Power Supply Bezel | |
| SPS Blank Bezel (1-Slot) | 6 |
| SPS-1000 IOMM Null Modem Cable | 1 |
| SPS Octal T1/E1 Debug Port Cable | 1 |

Lessee Initials: X _____   Date: 10/20/06

**EXHIBIT J**

  

**Equipment Finance Services**

10 Riverview Drive
Danbury, CT 06810

T (203) 749-6000

October 20, 2007

Customer
KGM Circuit Solutions LLC
30 Wall Street
New York, NY  10005

Re:     Notice of Assignment - Equipment Schedule No. 4416161-002 (the "Designated Schedule")
incorporating by reference the terms and conditions of that certain Master Note and Security
Agreement dated as of October 30, 2006, both between General Electric Capital Corporation ("GE")
and KGM Circuit Solutions LLC ("Customer").

Ladies and Gentlemen:

GE hereby gives Customer notice that GE has assigned to National City Commercial Capital
Company, LLC ("Purchaser"), whose offices are at 995 Dalton Avenue, Cincinnati, Ohio 45203 all right, title,
interest and obligations of GE in and to the Designated Schedule, the equipment described on the Designated
Schedule (the "Equipment") and any related documents.  From and after the date of this Notice, all payments of
rent, principal and interest and other sums now or hereafter becoming due pursuant to the Designated Schedule
shall be paid directly to Purchaser as Purchaser shall direct in Purchaser's invoices and any notices or other
correspondence to be delivered by Customer pursuant to the Designated Schedule shall be delivered to
Purchaser at the address specified above.

GENERAL ELECTRIC CAPITAL CORPORATION

By: _____

Name: JoEllen Bentson

Title: Capital Markets Operations - Syndications

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC
Purchaser

By: _____

Name: Thomas C. Otto

Title: Vice President

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL | : | Judge Brieant |
| COMPANY, LLC, | : | |
| | : | ECF CASE |
| | : | |
| Plaintiff, | : | AFFIDAVIT OF SERVICES |
| | : | |
| vs. | : | |
| | : | |
| KGM CIRCUIT SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

_____x


　　　FRANK PERETORE, the undersigned, an attorney duly licensed to practice law in the State of New Jersey, duly sworn upon his oath, SAYS:

　　　1. I am an attorney at law in the State of New Jersey and am a partner in the law firm of Peretore & Peretore, P.C., attorneys for the plaintiff in the above-entitled matter. I make this Affidavit upon personal knowledge and in support of the plaintiff's Motion for Default Judgment against defendants.

　　　2. The plaintiff has retained this firm on an hourly basis, plus expenses. As of June 9, 2008,

this office has invoiced National City Commercial Capital Company, LLC ("National City") for

$1,569.05 and $768.50 has not yet been billed for a total of $2,337.55. True and accurate copies of

all invoices issued are attached hereto as **EXHIBIT A**. As is evidenced from the invoices, this office

initially prepared and filed a Complaint and has since handled all aspects of this matter.

3.  I am the attorney responsible for the handling of this matter. I have represented for several

years. I have been practicing law, with a concentration in commercial litigation, since 1985. I

believe my hourly rate is fair and reasonable for an attorney of my experience in the legal

community.

4.  My hourly rate in this matter is $265.00.


        /s/  Frank Peretore, Esq.
        Frank Peretore, Esq.

Dated:


Sworn to and subscribed
before me this 10th day
of June, 2008.

  /s  Marlene J. Meyers

Marlene J. Meyers
Notary Public of New Jersey
My Commission Expires Feb. 9, 2010

**EXHIBIT A**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

National City Commercial Capital
995 Dalton Avenue
Cincinnati, OH 45203

March 25, 2008

Matter:    KGMCircuit

Attention:  Susan K. Young

Invoice #:    24991

RE:    National City Commercial Capital v. KGM Circuit Solutions, LLC. Leases ##88046000, 88047000, 88472000

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Feb-20-08 | Draft Demand Letter. | $265.00 | 0.50 | 132.50 | FP |
| | Totals | | 0.50 | $132.50 | |

| DISBURSEMENTS | Disbursements | Receipts |
|---------------|---------------|----------|
| Filing Fee | 350.00 | |
| Totals | $350.00 | $0.00 |

| | |
|---|---|
| **Total Fees & Disbursements** | **$482.50** |
| Previous Balance | $0.00 |
| Previous Payments | $0.00 |
| **Balance Due Now** | **$482.50** |

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

National City Commercial Capital

995 Dalton Avenue
Cincinnati, OH 45203

April 15,2008

Matter:    KGMCircuit

Attention: Susan K. Young

Invoice #:        25188

RE:      National City Commercial Capital v. KGM Circuit Solutions, LLC. Leases ##88046000, 88047000, 88472000

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Mar-10-08 | Review all loan documents and draft Complaint. | $265.00 | 1.25 | 331.25 | FP |
| Mar-12-08 | Revise complaint and draft Letter to client | $265.00 | 0.75 | 198.75 | FP |
| Mar-22-08 | Finalize and file suit. | $265.00 | 0.75 | 198.75 | FP |
| Mar-25-08 | Letter to client re; Complaint information. | $265.00 | 0.25 | 66.25 | FP |
| | Totals | | 3.00 | $795.00 | |

**Total Fees & Disbursements**                                            **$795.00**

Previous Balance                                                                   $482.50
Previous Payments                                                                    $0.00

**Balance Due Now**                                                          **$1,277.50**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

National City Commercial Capital

995 Dalton Avenue
Cincinnati, OH 45203

May 22, 2008

Matter:    KGMCircuit

Attention: Susan K. Young

Invoice #:        25393

RE:    National City Commercial Capital v. KGM Circuit Solutions, LLC. Leases ##88046000, 88047000, 88472000

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Apr-22-08 | Finalize and file lawsuit. | $265.00 | 0.40 | 106.00 | FP |
| Apr-29-08 | Review court notices and forward summons and complaint for service. | $265.00 | 0.40 | 106.00 | FP |
| | Totals | | 0.80 | $212.00 | |

| **DISBURSEMENTS** | | **Disbursements** | **Receipts** |
|-------------------|---|------------------|-------------|
| Apr-15-08 | Photocopies - April 134 @ 0.20 | 26.80 | |
| | Photocopies - April 208 @ 0.20 | 41.60 | |
| Apr-30-08 | Postage - April | 6.10 | |
| | Postage - April | 5.05 | |
| | Totals | $79.55 | $0.00 |

|                              |              |
|------------------------------|--------------|
| **Total Fees & Disbursements** | **$291.55**  |
|                              |              |
| Previous Balance             | $1,277.50    |
| Previous Payments            | $482.50      |
|                              |              |
| **Balance Due Now**          | **$1,086.55** |

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | |
|---|---|
| : | Case Number: 08 CIV 3856 |
| NATIONAL CITY COMMERCIAL CAPITAL : | Judge Brieant |
| COMPANY, LLC, : | |
| : | ECF CASE |
| : | |
| Plaintiff, : | ORDER FOR DEFAULT |
| : | JUDGMENT |
| vs. : | |
| : | |
| KGM CIRCUIT SOLUTIONS, LLC, : | |
| : | |
| Defendant. : | |

_____x


     This matter having come before the Court by motion of counsel for the plaintiff ("National

City") seeking entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against

the defendant for failure to answer or otherwise move in response to the Complaint which was duly

served upon them; and said defendant being in default of payment obligations to the plaintiff and the

1

defendant; and the plaintiff having submitted an Affidavit of Amount Due and Non-Military Service;

**THE COURT FINDS:**

1. This Court has jurisdiction of the subject matter of all counts of this action and over all the parties hereto.

2. The defendant was duly served with the Summons and Complaint.

3. The time to respond to the Summons and Complaint has expired and the defendant failed to respond.

4. A default judgment in this action is hereby to be entered in favor of National City Commercial Capital Company, LLC and against KGM Circuit Solutions, LLC.

**IT IS, THEREFORE ORDERED AND ADJUDGED**, that National City recover from KGM Circuit Solutions, LLC the sum of $84,578.00 plus $2,337.55 in attorneys' fees for a total of $86,915.55; and it is further

**ORDERED**, that plaintiff shall have immediate and permanent title and possession to the collateral equipment ("the equipment") subject to the transactions described in the Complaint and motion papers, which has not been returned to plaintiff, and which is described on **EXHIBIT A** (one page) hereto; and it is further

**ORDERED**, that the defendant shall properly maintain said equipment and return it to plaintiff or its agents within five (5) days hereof and fully cooperate in said return; and it is further

**ORDERED**, in the event that plaintiff takes possession of the equipment, plaintiff shall attempt to dispose of said personal property in a commercially reasonable manner in accordance with

the New York Uniform Commercial Code and the net proceeds from said sale, if any, after deduction

of reasonable expenses of retaking, holding, preparing for sale, selling and the like, shall be applied

to reduce the amount of the Judgment herein; and it is further

**ORDERED**, that a copy of this Order shall be served upon defendant within _____

days of receipt of same by plaintiff's counsel.

**SO ORDERED**, this _____ day of _____, 2008.

_____
Charles L. Brieant, U.S.D.J.

3

**EXHIBIT A**


**GE Commercial Finance**
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS, LLC
4416161005

| DESCRIPTION | QTY |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 4 Slot Equipment Nest - 24VDC | |
| DNX 4 Slot Equipment Nest - AC | |
| DNX 4 Slot Equipment Nest - 48 V DC | |
| DNX 11 Slot Equipment Nest | |
| DC Power Supply ( for 11 slot nest) | |
| AC Power Supply (for 11 slot nest) | |
| SMC II w/Stratum 3 clk | |
| Expansion Node Manager (XNM) | |
| SMC IIA or XNM rear module | |
| Expansion Node Cross Connect App (XCC) | |
| Expansion Node Cross Connect I/F (XCC) | |
| Expansion Link Controller Module (XLC) | |
| Single STS-1 Application Module | |
| Single STS-1 Interface Module | |
| Hybrid DS-3 Application Module | 4 |
| Hybrid DS-3 Interface Module | 4 |
| Octal T1/E1 Application Module | |
| Octal T1/E1 with APS Application Module | |
| Octal T1/E1 Interface Module | |
| Octal HSD Application Module | |
| Octal HSD Interface Module | |
| Quad OCUDP Application Module | |
| Quad OCUDP Interface Module | |
| Router/8 Application Module | |
| Router/8 Interface Module | |
| Octal Voice Application Module | |
| Octal 4 Wire E & M Interface Module | |
| Octal 2 Wire FXO/DPT Interface Module | |
| Octal 2 Wire FXS Interface Module | |
| STM1 Application Module | |
| STM1X (X-Link) Application Module | |
| OC3 Application Module | |
| OC3X (X-Link) Application Module | |
| STM1/OC3 inter range Interface Module | |
| STM1/OC3 Long range Interface Module | |
| Octal DS0-DP Application Module | |
| Octal DS0-DP Interface Module | |
| E3 Application Module | |
| E3 Interface Module | |
| DNX Family Product Documentation CD-ROM | 1 |

Lessee Initials: X _____  Date: _____

**GE Commercial Finance**
Vendor Financial Services

## N+1 Switch

| | |
|---|---|
| N +1 Protection Switch (for DNX 11 only) | |
| N+ 1 Switch Controller Card | |
| N +1 Switch DC Power Supply | |
| N+1 Narrowband Primary Card | |
| N +1 Narrowband Redundant Card | |
| N +1 Broadband-E Primary Card | 1 |
| N +1 Broadband+E Redundant Card | |

## SUBTOTAL - N+1 Switch Products

## Cables & Accessories

| | |
|---|---|
| N +1 Switch Blank Bezels | |
| Blank bezel for front system manager slots | |
| Blank bezel for front application slots | |
| Blank bezel for rear interface slots | |
| Blank bezel for power supply slots - DNX-11 | |
| VAC to VDC Power Converter (1.5A) | |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable | |
| 50 pin telco to bare wire cable | |
| Harmonica Adapter 50 pin F to 8 RJ-48C | |
| Broadband M/M Coaxial Cable | |
| Expansion cable - XCC to XLC (10') | |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| DSX Flush 23" Rack Mount Adapter Kit | |
| DSX Center 23" Rack Mount Adapter Kit | |

| | |
|---|---|
| System Software - Current GA Release | 1 |
| DNX 11 Slot Equipment Nest | 1 |
| DC Power Supply ( for 11 slot nest) | 0 |
| AC Power Supply (for 11 slot nest) | 2 |
| SMC II w/Stratum 3 clk | 2 |
| Expansion Node Manager (XNM) | 0 |
| SMC II or XNM rear module | 0 |
| SMC IIA or XNMa rear module | 1 |
| Expansion Node Cross Connect App (XCC) | 0 |
| Expansion Node Cross Connect I/F (XCC) | 0 |
| Expansion Link Controller Module (XLC) | 2 |
| Single STS-1 Application Module | 0 |
| Single STS-1 Interface Module | 0 |
| Hybrid DS-3 Application Module | 1 |
| Hybrid DS-3 Interface Module | 1 |
| Octal T1/E1 Application Module | 0 |
| Octal T1/E1 with APS Application Module | 0 |
| Octal T1/E1 Interface Module | 0 |
| Octal HSD Application Module | 0 |
| Octal HSD Interface Module | 0 |
| Quad OCUDP Application Module | 0 |
| Quad OCUDP Interface Module | 0 |

Lessee Initials: X _____    Date: 10/26/02

**GE Commercial Finance**
Vendor Financial Services

| | |
|---|---|
| Single Router Application Module | 0 |
| Single Router Interface Module | 0 |
| Router/8 Application Module | 0 |
| Router/8 Interface Module | 0 |
| Octal Voice Application Module | 0 |
| Octal 4 Wire E & M Interface Module | 0 |
| Octal 2 Wire FXO/DPT Interface Module | 0 |
| Octal 2 Wire FXS Interface Module | 0 |
| STM1 Application Module | 0 |
| OC3 Application Module | 0 |
| OC3/STM1 Optical Nest (X-link) Software | 0 |
| STM1/OC3 Inter. range Interface Module | 0 |
| STM1/OC3 Long range Interface Module | 0 |
| Octal DS0-DP Application Module | 0 |
| Octal DS0-DP Interface Module | 0 |
| E3 Application Module | 0 |
| E3 Interface Module | 0 |

| | |
|---|---|
| DNX Family Product Documentation CD-ROM | 0 |

| N+1 Switch | QTY |
|---|---|
| N +1 Protection Switch (for DNX 11 only) | 1 |
| N+ 1Switch Controller Card | 1 |
| N +1 Switch DC Power Supply | 2 |
| N+1 Narrowband Primary Card | 0 |
| N +1 Narrowband Redundant Card | 0 |
| N +1 Broadband-E Primary Card | 0 |
| N +1 Broadband-E Redundant Card | 1 |

| Cables & Accessories | |
|---|---|
| N +1 Switch Blank Bezels | 7 |
| Blank bezel for front system manager slots | 0 |
| Blank bezel for front application slots | 5 |
| Blank bezel for rear interface slots | 7 |
| Blank bezel for power supply slots - DNX-11 | 0 |
| DSX Patch Panel 48 port | |
| 50 pin to 50 pin telco cable - 15Ft | |
| 50 pin telco to bare wire cable - 15Ft | 0 |
| Harmonica Adaptor 50 pin F to 8 RJ-48C | |
| Broadband M/M Coaxial Cablem - 15Ft | |
| Expansion cable - XCC to XLC (10') | 4 |
| Expansion cable - XCC to XLC (20') | |
| DNX-11 Flush 23" Rack Mount Adapter Kit | |
| DNX-11 Center 23" Rack Mount Adapter Kit | |
| PSX Flush 23" Rack Mount Adapter Kit | |
| PSX Center 23" Rack Mount Adapter Kit | |

Lessee Initials: X _____    Date: 10/24/00


GE Commercial Finance

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS, LLC
4416161003

| DESCRIPTION | QTY. |
|---|---|
| System Software - Current GA Release | 1 |
| DMX-11 Slot Equipment Host | 1 |
| DC Power Supply (for 1 Half Rack) | 2 |
| AC Power Supply, North (side mesh) | 2 |
| SMC II Processor Card | 0 |
| Expansion Node Module (XNM) | 2 |
| SMC II for XNM main module | 0 |
| SMC III for XNM rear module | 0 |
| Expansion Node Cross Channel App (XCC) | 2 |
| Expansion Node Cross Channel (XCC) | 1 |
| Expansion Link Connector Module (XLC) | 0 |
| Single STS-1 Processor Unit Module | 0 |
| Single STS-1 Interface Module | 0 |
| Hybrid DS-3 Application Module | 4 |
| Hybrid DS-3 Interface Module | 4 |
| Octal T1/E1 Application Module | 0 |
| Octal T1/E1 (with APS) Application Module | 0 |
| Octal T1/E1 Interface Module | 0 |
| Octal HSD Application Module | 0 |
| Octal HSD Interface Module | 0 |
| Quad DC/UDP Application Module | 0 |
| Quad DC/UDP Interface Module | 0 |
| Single Router Application Module | 0 |
| Single Router Interface Module | 0 |
| Router Application Module | 0 |
| Router Interface Module | 0 |
| Octal Voice Application Module | 0 |
| Octal 4 Wire E & M Interface Module | 0 |
| Octal 2 Wire FXO/FXS Interface Module | 0 |
| Octal 2 Wire FXS Interface Module | 0 |
| STM-1 Application Module | 0 |
| GbS Application Module | 0 |
| OC3/STS-1 Optical Ring (OSR) Software | 0 |
| STM-1/OC3 Short range Interface Module | 0 |
| STM-1/OC3 Long range Interface Module | 0 |
| Octal DS0-DP Application Module | 0 |
| Octal DS0-DP Interface Module | 0 |
| E3 Application Module | 0 |
| E3 Interface Module | 0 |

Lessee Initials: X _____    Date: 5-12-06

MAY 12 2006 12:39



GE Commercial Finance
Vendor Financial Services

| | |
|---|---|
| N-1 Protection switch on the DXC (1 only) | 1 |
| N-1 Switch Computer Card | 1 |
| N-1 Switch DC Power Supply | 2 |
| N-1 Non-protect Filtering Card | 0 |
| N-1 Non-protect Return Card | 0 |
| N-1 Broadband-E Primary Card | 2 |
| N-1 Broadband-E Redundant Card | 1 |

| | |
|---|---|
| N-1 Switch Blank Bezel | 1 |
| Blank bezel for card system main bezel slots | 0 |
| Blank bezel for front application slots | 0 |
| Blank bezel for rear interface slots | 0 |
| Blank bezel for power supply slots (DXC) | 0 |
| DXC Patch Panel (6 port) | 1 |
| 50 pin to 50 pin label cable (4ft) | 1 |
| 50 pin Telco to bare wire cable (4ft) | 1 |
| Terminal Adapter to Dual Rela Adapter | 1 |
| Broadband M/E Coaxial Cable (7ft) | 1 |
| Expansion cable (DXC to DXC) (10') | 1 |
| Expansion cable (DXC to DXC) (5') | 0 |
| DXC 1U Flush 23" Rack Mount Adapter Kit | 1 |
| DXC 1U Center 23" Rack Mount Adapter Kit | 1 |
| PSX Flush 23" Rack Mount Adapter Kit | 1 |
| Rack Center 23" Rack Mount Adapter Kit | 1 |

Lessee Initials: X_____ Date: 5-12-06

*Anthony LANCH   000521 - 1140*

 **GE Commercial Finance**
Vendor Financial Services

## Exhibit A to Schedule and Certificate of Acceptance

KGM CIRCUIT SOLUTIONS LLC
4416161002

| Item Qty. | Qty. |
|---|---|
| SPS-1000 Chassis (DC) | |
| SPS-1000 Chassis (AC) | 1 |
| SPS-1000 Power Supply (DC) | |
| SPS-1000 Power Supply (AC) | 2 |
| SPS-1000 Fan Tray (Front) | 1 |
| SPS Octal T1/E1-DSP41 Module (Front) | 1 |
| SPS Octal T1/E1 Module (Rear) | 1 |
| SPS Conferencing Shelf (1 copy per Module Set) | 1 |
| **Cables & Accessories** | |
| 50-Pin TELCO to 8 individual RJ45C (crossover) | 1 |
| SPS-1000 Blank Power Supply Bezel | |
| SPS Blank Bezel (1-Slot) | 6 |
| SPS-1000 ICM/M Null Modem Cable | 1 |
| SPS Octal T1/E1 Debug Port Cable | 1 |

Lessee Initials: X _____  Date: 10/26/06

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for National City Commercial Capital Company, LLC

/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC, | : | Case Number: 08 CIV 3856 |
|  | : | Judge Brieant |
|  | : | ECF CASE |
| Plaintiff, | : | AFFIDAVIT OF MAILING |
| vs. | : |  |
| KGM CIRCUIT SOLUTIONS, LLC, | : |  |
| Defendant. | : |  |

_____x

STATE OF NEW JERSEY    :
                                              : SS.:
COUNTY OF SUSSEX        :

     I, Marlene Meyers, am over 18 years of age and am not a party to this action, being duly sworn according to law, SAY:

     1. On June 10, 2008, I mailed a copy of the Notice of Motion for Default Judgment, Request for Entry of Default, Affidavit of Service and Default, Affidavit of Amount Due and Non-Military Service, Affidavit of Services, proposed Order, and Affidavit of Mailing, to the defendant as follows:

KGM Circuit Solutions, LLC
30 Wall Street, Suite 1100
New York, New York 10003

which were deposited into a United States Mail Depository located at 1 Main Street, Unionville, New

York 10988.


                         /s/  Marlene Meyers
                        Marlene Meyers

Sworn to and subscribed
before me this 10th day
of June, 2008.

 /s/  Erin C. Clayton

Erin C. Clayton
Notary Public of New Jersey
My Commission Expires 05/16/2011